## GIBSON *v.* BEAVER AND SOUTHERN STATES HOWARD COUNTY PETROLEUM COOP., INC.

[No. 77, September Term, 1966.]

*Decided February 10, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*Charles A. Reese* for appellant.

*Richard H. Lerch,* with whom were *Lerch & Huesman* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

Broton Gibson sued Paul Beaver, the driver of a fuel oil delivery truck, and Southern States Howard County Petroleum Coop., Inc., the owner of the truck, claiming damages for a

heart attack he suffered while he was pulling the delivery hose from the truck to the fuel inlet at the back of his house. Judge Mayfield sustained a demurrer to Gibson's declaration without leave to amend, finding that it did not allege that the defendants under the circumstances had owed a duty to the plaintiff which they had breached. Gibson moved for a rehearing under Maryland Rule 625, claiming that the declaration did state a good cause of action and, alternatively, that the court should allow the filing of an amended narr in which original allegations would be supplemented as specified in detail in the motion.

Judge Mayfield treated the second alternative in the motion for rehearing as if it were an amended declaration and, finding it to have failed to state a cause of action, denied the motion. Gibson has appealed from the order sustaining the demurrer and the order denying the rehearing.

The allegations of the original declaration, considered as supplemented by the additional allegations set out in the motion, are in substance these:

That on January 13, 1964, a cold, windy day with several inches of snow on the ground, Beaver drove a Southern States' oil truck to Gibson's house in Howard County to deliver fuel oil; that "the snow had drifted and accumulated several feet deep in the driveway * * * and * * * Beaver, being unable to drive his truck forward or to back the truck through the snow to the back of the house to deliver the oil, positioned his truck with its front facing the house" so that the hose was far from the house inlet and it was necessary to pull the hose around the truck to get it to the rear of the house; that Beaver "indicated" to Gibson that if he wanted fuel oil, it would be necessary for him to come out and pull the hose from the oil truck to the point of connection with the house; that Beaver had twelve years' experience as an oil deliveryman, was "a much larger man in stature and weight" than Gibson, who was fifty-five years old at the time "and was not experienced in delivering fuel oil or pulling hoses from fuel oil trucks"; that the distance from the truck to the house connection was approximately one hundred feet, "a distance which * * * [Beaver] knew, or should have known, required an unreasonable effort and subjected * * * [Gibson] to unreasonable risk of harm"; that the

position of the truck made the pulling of the hose "extremely difficult"; that the defendants "having made the judgment to deliver oil to the Plaintiff, were negligent in not providing sufficient employees to deliver the oil" under the existing circumstances, and also were negligent in assigning to Gibson a task which involved "great risk of harm" to him while Beaver performed a task involving much less risk of harm.

We think that Judge Mayfield did not err in his rulings that no cause of action was stated by Gibson's pleadings.

Gibson voluntarily assumed the risk of injury which might result from his dragging the delivery hose from the truck to the house over snow-covered ground. "The defense of assumption of risk rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from a particular risk. Such consent may be found: * * * by implication from the conduct of the parties. When the plaintiff enters voluntarily into a relation or situation involving obvious danger, he may be taken to assume the risk, and to relieve the defendant of responsibility. Such implied assumption of risk requires knowledge and appreciation of the risk, and a voluntary choice to encounter it." Prosser, *Torts*, § 55, p. 303 (2d Ed. 1955).

In determining whether a plaintiff had knowledge and appreciation of the risk, an objective standard must be applied and a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him. As Prosser in the work cited puts it at p. 310:

> "As in the case of negligence itself, there are certain risks which any one of adult age must be taken to appreciate: the danger of slipping on ice, of falling through unguarded openings, of lifting heavy objects, of being squeezed in a narrow space, of inflammable liquids, or of unguarded circular saws or similar dangerous machinery. * * * In the usual case, his knowledge and appreciation of the danger will be a question for the jury; but where it is clear that any person of normal intelligence in his position must have understood the danger, the issue must be decided by the court."

Gibson must be taken to have been aware of the danger of slipping on snow and of the burden the snow would add to physical effort taken in it; he must be charged with knowledge of the heaviness of a hose of large diameter in which there was fuel oil and of the possible physical effects on a man of his age of the effort to lift it or drag it through the snow. If he did not appreciate this sooner, he must have when he took hold of the hose. Yet he voluntarily undertook to take his chance of harm from the effort of pulling it to the house. This voluntary undertaking in the environment and circumstances present freed the defendants as a matter of law from liability for harm which might flow from the undertaking. See *Velte v. Nichols,* 211 Md. 353 (and cases cited at p. 356), where the plaintiff's evidence was that as a prospective purchaser of Christmas trees he was told by the merchant to go up a six-foot ladder "to look at them" and to throw down those he wanted; he did so and fell from the top of the ladder when its foot slipped on ice, covered with pine needles. We held that the buyer had assumed the risk when he climbed the ladder. See also *Evans v. Johns Hopkins University,* 224 Md. 234; *Finkelstein v. Vulcan Rail Co.,* 224 Md. 439; and *Burke v. Williams,* 244 Md. 154, in each of which, under facts not in dispute, the plaintiff had intentionally and voluntarily exposed himself to a known danger and we approved the granting of a summary judgment or the direction of a verdict.

Gibson is not helped by his contention that his allegations show that he was in effect coerced by the necessity of having oil to undertake to pull the hose to the house, and thus was not a volunteer. A similar contention was rejected in *Burke v. Williams* because there was no showing that the act of the plaintiff which produced the harm was done by him against his will. The declaration in the present case goes no further than to allege that "Beaver indicated to the Plaintiff that if he wanted fuel oil it would be necessary for him * * * to come out and pull the hose from the oil truck to the point of connection with the house." Clearly this presented Gibson with a choice he was free to accept or reject.

> "The plaintiff takes a risk *voluntarily* (within the meaning of the present rule) where the defendant has

a right to face him with the dilemma of 'take it or leave it'—in other words, where defendant is under no duty to make the conditions of their association any safer than they appear to be. In such a case it does not matter that plaintiff is coerced to assume the risk by some force not emanating from defendant, such as poverty, dearth of living quarters, or a sense of moral responsibility." 2 Harper and James, *Torts,* § 21.3, p. 1174 (1956).

*Order affirmed, with costs.*