## McCLEARN v. SOUTHEAST CONCRETE CO., INC., ET AL.

[No. 186, September Term, 1968.]

*Decided April 7, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SMITH, JJ.

*Earl H. Davis* for appellant.

*Jerrold V. Powers,* with whom were *John A. Buchanan* and *Sasscer, Clagett, Powers & Channing* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

Appellant (McClearn) here appeals from the action of the Circuit Court for Prince George's County in granting motions of appellees, Southeast Concrete Co., Inc., and Thomas Penn (Penn), for a directed verdict. The motion was based on three grounds, (1) failure to prove primary negligence, (2) contributory negligence and (3) assumption of risk. We shall sustain the action of the trial court.

The accident happened on June 4, 1966. McClearn is in the cement finishing business with an uncle. On this date he was engaged in his trade with a crew of laborers at a small development in Prince George's County. They awaited delivery of ready-mixed concrete for the basement of a home under construction. Appellee, Southeast Concrete Co., Inc., was the supplier. Penn was the driver of Southeast's truck.

McClearn directed Penn to the basement window where the concrete was to be unloaded. Penn got in line with the appropriate window. McClearn stepped behind the truck to direct the driver back. The driver was using rear view mirrors situated so that he could see backwards and down both sides of the truck. The truck was backed close to the window. McClearn then signaled for the driver to stop, which he did. McClearn unfastened the chute which is pivotal at the mouth of the revolving drum of the concrete truck. He adjusted the chute for height. He proceeded to hold the chute with his right hand for the purpose of directing it into the window, intending to use his left hand for signaling to the driver. He signaled the driver to begin backing up, which he did. When the chute was in the desired position, McClearn then signaled for the driver to stop. The driver failed to stop. McClearn yelled, "Hold it, hold it!" The chute struck the house near the window opening, knocking several bricks loose. It jammed McClearn's hand between the chute and the wall, thereby causing the injuries which are the subject of this suit.

McClearn testified that it was the custom in the trade for the drivers of concrete trucks to take their signals from him. He admitted turning his back to the window in order to signal the truck driver.

Penn was called as an adverse witness by McClearn. One portion of the record is as follows:

"Q. Was there any statement or comment at that time about the manner of directing or the directing of your truck back to get in position to discharge? A. Before I started back I asked him, I said, 'You ought to get one of those men out of the basement up here so I can see one of them in the mirror while the man is holding the chutes.'

"He said, 'That's all right, come back.' He said, 'I'll direct you back.'"

At another point the record is as follows:

"THE COURT: Mr. Penn, you said you had this discussion with the plaintiff prior to backing, that he ought to have somebody to hold the chute?

"THE WITNESS: That's right.

"THE COURT: Was it the practice to use two men in the back there when you back it?

"THE WITNESS: They usually use—if you've got two men on a job, you usually use a man that can always stay in the mirror while the other man handles the chute. Once you step out of the view of that mirror, you don't—you can't see the man, and it is a general practice to have two men."

At no point was the aforegoing testimony of Penn disputed.

As has been frequently said by this Court, in cases like this we must consider the evidence and all logical and reasonable inferences deducible therefrom in a light most favorable to the plaintiff. *Trusty v. Wooden,* 251 Md. 294, 297, 247 A. 2d 382 (1968), *Finneran v. Wood,* 249 Md. 643, 645, 241 A. 2d 579 (1968). Also, as was observed in *Trusty v. Wooden, supra:*

"One may call an adverse party as a witness but if he

does so he is bound by his adversary's testimony unless it is contradicted or discredited. Code, Art. 35 § 9 (1965 Repl. Vol.) ; *Wood v. Johnson,* 242 Md. 446, 453, 219 A. 2d 231 (1966) ; *Lehmann v. Johnson,* 218 Md. 343, 146 A. 2d 886 (1958)." *Id.* at 297.

See also *Williams v. Wheeler,* 252 Md. 75, 79, 249 A. 2d 104 (1969).

In order for a plaintiff to prevail in an action for negligence, he must first allege and prove primary negligence, and he himself must be free of contributory negligence. In addition, he must not have voluntarily assumed a known risk which risk resulted in the injury of which he complains. In *People's Drug Stores v. Windham,* 178 Md. 172, 186, 12 A. 2d 532 (1940), this Court stated:

> "The doctrines of assumed risk and contributory negligence are closely allied, but they are not the same thing. The doctrine of assumed risk implies intentional exposure to a known danger, which may or may not be true of contributory negligence."

In *Gibson v. Beaver,* 245 Md. 418, 421, 226 A. 2d 273 (1967) this Court, speaking through Chief Judge Hammond, found as a matter of law that "Gibson voluntarily assumed the risk of injury which might result from his dragging the delivery hose from the truck to the house over snow-covered ground." The Court continued to discuss the defense of assumption of risk quoting from Prosser, *Torts,* (2d Ed. 1955) as follows:

> " 'The defense of assumption of risk rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from a particular risk. Such consent may be found: * * * *by implication from the conduct of the parties.* When the plaintiff enters voluntarily into a relation or situation involving obvious danger, he may be taken to assume the risk, and to relieve the defendant of responsibility. Such implied assumption of risk requires knowledge and appreciation of the risk, and a voluntary choice to encounter it.' Prosser, *Torts,* § 55, p. 303 (2d Ed. 1955).

. "In determining whether a plaintiff had knowledge and appreciation of the risk, an objective standard must be applied and a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him. As Prosser in the work cited puts it at p. 310:

"'As in the case of negligence itself, there are certain risks which anyone of adult age must be taken to appreciate: the danger of slipping on ice, of falling through unguarded openings, of lifting heavy objects, of being squeezed in a narrow space, of inflammable liquids, or of unguarded circular saws or similar dangerous machinery. * * * In the usual case, his knowledge and appreciation of the danger will be a question for the jury; *but where it is clear that any person of normal intelligence in his position must have understood the danger, the issue must be decided by the court.'* " *Id.* at 421. (emphasis added)

In *Burke v. Williams,* 244 Md. 154, 223 A. 2d 187 (1966) this Court, after discussing the doctrines of contributory negligence and assumption of risk, stated:

"In cases such as this one, where the facts are not in dispute and the plaintiff intentionally and voluntarily exposed himself to a known danger, we have sustained the granting of a summary judgment or the direction of a verdict. See *Evans v. Johns Hopkins University,* 224 Md. 234, 167 A. 2d 591 (1961) and *Finkelstein v. Vulcan Rail Co.,* 224 Md. 439, 168 A. 2d 393 (1961). The *Finkelstein* case, which also involved an accident at a construction site [as did *Burke* and as does the instant case], is particularly apposite here. There, after pointing out that *the dangers at a construction site are more apt to be obvious than in other areas and that it is quite usual to find workmen voluntarily assuming known risks in the performance of their tasks,* it was held that there was no primary negligence, and, that if such negligence be assumed,

the plaintiff assumed the risk." *Id.* at 158. (emphasis added)

McClearn was experienced in his trade, having been continuously so employed for five years prior to the accident and previously so employed in 1952. He certainly must have been aware of the danger of "being squeezed in a narrow place," *i.e.* being injured by a backing cement truck, when he voluntarily occupied a position between the house and the moving truck for the purpose of guiding a chute attached to the truck into the basement window. He had at least three employees present in the basement at the time of the accident, since Messrs. Marshall, Johnson and Phoebus all testified that they were in the basement at the time.

In *Evans v. Johns Hopkins University,* 224 Md. 234, 238, 167 A. 2d 591 (1961) Chief Judge Brune commented for this Court with reference to the plaintiff, "He chose to perform this experiment or operation in his usual laboratory as a matter of his own convenience." McClearn here preferred convenience to safety. With full knowledge of the risks incident thereto at the site after having already been put on notice by Penn, McClearn assumed the risk of injury when he had help readily available to follow the precautionary suggestion of Penn. Accordingly, he is barred by the defense of assumption of risk. *Burke v. Williams, supra,* 157-58; *Evans v. Johns Hopkins University, supra,* at 239. The action of the trial court in directing a verdict for the defendants was proper.

Since we hold that McClearn is barred by the defense of assumption of risk, we are not obliged to pass on the questions of the primary negligence of Penn or the contributory negligence of McClearn.

*Judgment affirmed; appellant to pay the costs.*