702 A.2d 730

**ADM PARTNERSHIP et al.**

v.

**Keen Tykenko MARTIN et al.**

**No. 5, Sept. Term, 1996.**

Court of Appeals of Maryland.

Nov. 19, 1997.

**86**

Edward J. Brown (McCarthy, Wilson & Ethridge, on brief), Rockville, for petitioners.

Bruce M. Bender (Jeremy K. Fishman, Van Grack, Axelson & Williamowsky, P.C., on brief), Rockville, for respondents.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI * and RAKER, JJ., and ROBERT C. MURPHY, Judge (retired), Specially Assigned.

BELL, Chief Judge.

The issue this case presents is whether the "voluntariness" element of the assumption of risk defense is met when an employee encounters a known risk while performing a responsibility of her employment, but, nevertheless, based solely on her subjective belief that the failure to fulfill that responsibility may result in adverse economic consequences to her employer and ultimately to herself, proceeds to confront the risk, sustaining, in the process, serious bodily injury. We shall answer in the affirmative.

In the case *sub judice*, Keen Tykenko Martin (Martin) and American Motorist Insurance Company, (collectively, the respondents) [1] filed, in the Circuit Court for Montgomery Coun-

---

* Karwacki, J., now retired, participated in the hearing of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of the opinion.

1. American Motorists is Ideal Reprographics' worker's compensation insurer. Ideal Reprographics, Inc. is Martin's employer. American Motorists, therefore, paid Martin's worker's compensation benefits. As a result, it was subrogated to Martin's rights. All rights and defenses applicable to Martin are equally applicable to American Motorists. *See* Md.Code (1957, 1991 Repl.Vol., 1997 Supp.) § 9–902(a) of the Labor and Employment Article; *Erie Ins. Co. v. Curtis*, 330 Md. 160, 164, 623 A.2d 184, 186 (1993); *Brodsky v. Princemont Const. Co.*, 30 Md.App. 569, 354 A.2d 440 (1976); *Johnson v. Miles*, 188 Md. 455, 53 A.2d 30 (1947).

ty, an action sounding in negligence against ADM Partnership, Inc. and its three general partners, Scott L. MacDonald, Joe C. Adams, and Franklin J. Duane, (collectively, the petitioners), for injuries Martin sustained when she slipped and fell on an ice and snow covered walkway as she made a delivery at a building the petitioners owned. At the conclusion of the respondents' case, the circuit court granted the petitioners' motion for judgment and entered judgment accordingly. Viewing the evidence in the light most favorable to the respondents, the court found that the evidence conclusively established that Martin knowingly and voluntarily assumed the risk of falling on a walkway covered with ice and snow. The respondents appealed that judgment to the Court of Special Appeals, which, in a reported opinion, *Martin v. ADM Partnership, Inc.*, 106 Md.App. 652, 666 A.2d 876 (1995), reversed. This Court granted the petitioners' petition for the writ of certiorari, 341 Md. 719, 672 A.2d 659 (1996). For the reasons set forth herein, we shall reverse the judgment of the Court of Special Appeals and affirm the judgment of the circuit court.

## I.

The pertinent facts are not in dispute. On the morning of March 8, 1989, Martin, employed as a delivery person for Ideal Reprographics, Inc., a blueprint reproduction company, was assigned to deliver blueprints to a business located in Rockville, Maryland, at 98 Church Street, a property owned by the petitioners. Although it had snowed some nineteen hours earlier and the precipitation had ceased, ice and snow surrounded the building, particularly the parking lot directly in front of the building and the entrance walkway. Martin testified at trial that she observed that there was ice and unplowed snow surrounding the building when she arrived at the building, and that she wondered why the walkways had not been cleared. Despite the condition of the parking lot and the entrance walkway, Martin testified that, because she observed that there were other vehicles in the parking lot, that people were working inside the building, and that there were footprints in the snow and ice, suggesting that there was a

safe means of ingress and egress to and from the building, she felt that she could safely enter the building. Martin also testified that, although her employer never told her that she could lose her job if she did not make the subject delivery, or any other deliveries she was assigned to make, she believed that she had no choice but to deliver the blueprints. As she saw it, if the delivery was not made, Ideal Reprographics could have lost that delivery contract, with the consequence that her employment could then have been terminated.

To retrieve the blueprints for delivery, Martin exited her vehicle and started around to the passenger side. As she proceeded, Martin slipped on the ice in the parking lot, but avoided falling to the ground by grabbing hold of her vehicle. Having recovered without injury, Martin walked across the ice covered walkway without further incident and delivered the blueprints. She then retraced her steps, exiting the building using the same walkway. As she left the building, Martin once again slipped. This time, however, unlike the first incident, she fell and sustained serious injury to her lower back.

The respondents' suit against the petitioners alleged that the petitioners were negligent in the following respects: (1) failing to maintain a safe walkway, (2) failing to remove the snow and ice from the parking lot and walkway areas as required by local law, and (3) failing to provide adequate warning. After the close of the respondents' case-in-chief, the petitioners moved for judgment. Relying on *Schroyer v. McNeal*, 323 Md. 275, 592 A.2d 1119 (1991), they argued that Martin assumed the risk of walking and falling on the ice and snow covered parking lot and entrance walkway, thus, requiring that judgment be entered in their favor on that ground. The respondents answered and denied that Martin knowingly assumed the risk of her own injuries. They pointed out, in that regard, that Martin saw footprints in the snow indicating that other people had safely traversed the walkway. The respondents also argued that Martin did not voluntarily assume the risk because she believed that, if the blueprints were

not delivered, both she and her employer would have experienced adverse economic consequences.

The trial court rejected the respondents' arguments. Applying an objective standard, the trial judge observed, "Everybody knows that walking on ice is slippery. The taking of the risk—the assumption of the risk is with that knowledge, because other people have traversed it, apparently, for the footprints, or for whatever reason assumes that I can do it if I walk carefully." Additionally, the court found that Martin's admission that she had seen the icy walkways and that she had slipped on the ice prior to the fall in which she was injured indisputedly support a finding that she was aware of the risk. Addressing the voluntariness of Martin's conduct, the trial court concluded that, despite her fear of termination or of her employer's loss of the delivery contract, Martin nevertheless made a calculated decision, premised on the fact that others had safely traversed the ice and snow covered parking lot and entrance walkway, to take a chance and carefully walk across the walkway.

Reversing, the Court of Special Appeals held that the petitioners were not entitled to judgment as a matter of law because the evidence, viewed in the light most favorable to the respondents, demonstrated an issue of fact for the jury as to whether Martin assumed the risk of her injuries. Specifically, the court concluded that Martin's belief that she would have suffered negative repercussions at her job had she failed to make the delivery as directed presented a factual dispute as to whether her actions were voluntary.[2]

## II.

In Maryland, it is well settled that in order to establish the defense of assumption of risk, the defendant

---

2. The intermediate appellate court did, however, acknowledge that Martin had knowledge of and appreciation for the danger of walking across an ice and snow covered parking lot and walkway. This finding has not been challenged on this appeal and, therefore, the parties have neither briefed nor argued this issue.

must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger. *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 630, 495 A.2d 838 (1985); *see also Schroyer v. McNeal*, 323 Md. 275, 283, 592 A.2d 1119, 1123 (1991); *Odenton Dev. Co. v. Lamy*, 320 Md. 33, 43, 575 A.2d 1235, 1239 (1990); *Hooper v. Mougin*, 263 Md. 630, 635, 284 A.2d 236, 239 (1971); *McClearn v. Southeast Concrete Co.*, 253 Md. 135, 138–39, 251 A.2d 896, 898–99 (1969); *Gibson v. Beaver*, 245 Md. 418, 421, 226 A.2d 273, 275 (1967); *Burke v. Williams*, 244 Md. 154, 158, 223 A.2d 187, 189 (1966); *Evans v. Johns Hopkins Univ.*, 224 Md. 234, 238–39, 167 A.2d 591, 593–94 (1961); *Finkelstein v. Vulcan Rail & Const. Co.*, 224 Md. 439, 442, 168 A.2d 393, 394–95 (1961); *Velte v. Nichols*, 211 Md. 353, 356, 127 A.2d 544, 546 (1956); *Bull S.S. Lines v. Fisher*, 196 Md. 519, 525–26, 77 A.2d 142, 146–47 (1950); *Warner v. Markoe*, 171 Md. 351, 359–60, 189 A. 260, 264 (1937). "The doctrine of assumption of risk rests upon an intentional and voluntary exposure to a known danger and, therefore, consent on the part of the plaintiff to relieve the defendant of an obligation of conduct toward [her] and to take [her] chances from harm from a particular risk." *Rogers v. Frush*, 257 Md. 233, 243, 262 A.2d 549, 554 (1970). *See also* W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 68 at 490 (5th ed.1984) (hereinafter *Prosser and Keeton*). Assumption of risk means "voluntary incurring that of an accident which may not occur, and which the person assuming the risk may be careful to avoid after starting." *Schroyer*, 323 Md. at 281, 592 A.2d at 1123. Thus, if established, it functions as a complete bar to recovery because "it is a previous abandonment of the right to complain if an accident occurs." *Warner*, 171 Md. at 360, 189 A. at 264.

"In determining whether a plaintiff had knowledge and appreciation of the risk, an objective standard must be applied and a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him." *Gibson*, 245 Md. at 421, 226 A.2d at 275. Thus, "when it is clear that a person of normal intelligence in the position of the

plaintiff must have understood the danger, the issue is for the court." *Schroyer,* 323 Md. at 283–4, 592 A.2d at 1123; *see also Gibson,* 245 Md. at 421, 226 A.2d at 275 (quoting W. Prosser, *Handbook of the Law of Torts* § 55 at 310 (2nd ed.)); *Evans,* 224 Md. at 238–39, 167 A.2d 591. Moreover, "there are certain risks which anyone of adult age must be taken to appreciate: the danger of slipping on ice, of falling through unguarded openings, of lifting heavy objects ... and doubtless many others." *Prosser and Keeton* § 68 at 488.

 Concerning whether a plaintiff has voluntarily exposed him or herself to the risk of a known danger, "there must be some manifestation of consent to relieve the defendant of the obligation of reasonable conduct." *Id.* at 490.

> "[T]he risk will not be taken to be assumed if it appears from [the plaintiff's] words, or from the facts of the situation, that he does not in fact consent to relieve the defendant of the obligation to protect him. Nevertheless, if the plaintiff proceeds to enter voluntarily into a situation which exposes him to the risk, notwithstanding any protests, his conduct will normally indicate that he does not stand on his objection, and has consented, however reluctantly, to accept the risk and look out for himself."

*Id.* (footnote omitted). *See also Pinehurst Co. v. Phelps,* 163 Md. 68, 72, 160 A. 736, 737 (1932) ("A risk, while obvious, may not be so imminently dangerous that a prudent man would necessarily avoid it, yet if it shall be freely encountered it will in general be held to be so far assumed that no recovery for consequent injury is possible.") (quoting *Bohlen's Studies on Torts,* at 446). It follows, therefore, that, in order for a plaintiff to assume voluntarily a risk of danger, there must exist "the willingness of the plaintiff to take an informed chance," *Schroyer,* 323 Md. at 283, 592 A.2d at 1123; there can be no restriction on the plaintiff's freedom of choice either by the existing circumstances or by coercion emanating from the defendant. This is so because

> [e]ven where the plaintiff does not protest, the risk is not assumed where the conduct of the defendant has left him no

reasonable alternative. Where the defendant puts him to a choice of evils, there is a species of duress, which destroys the idea of freedom of election.

*Prosser and Keeton* § 68 at 490–91.

The above-stated points are addressed and illuminated in the Restatement (Second) of Torts, § 496E and comment b, which provide:

(1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk.

(2) The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to

(a) avert harm to himself or another, or

(b) exercise or protect a right or privilege of which the defendant has no right to deprive him.

\* \* \* \*

The plaintiff's acceptance of the risk is to be regarded as voluntary even though he is acting under the compulsion of circumstances, not created by the tortious conduct of the defendant, which have left him no reasonable alternative. Where the defendant is under no independent duty to the plaintiff, and the plaintiff finds himself confronted by a choice of risks, or is driven by his own necessities to accept a danger, the situation is not to be charged against the defendant. Thus a plaintiff who is forced to rent a house which is in obvious dangerous condition because he cannot find another dwelling, or cannot afford another, assumes the risk notwithstanding the compulsion under which he is acting.

### III.

The Court of Special Appeals correctly concluded that an employee's "act becomes voluntary when the employee is given a clear and reasonable choice either to act or not act, and then chooses willingly to act." 106 Md.App. at 661, 666

A.2d at 881. Characterizing "[t]he question [as], at what point does carrying out an employment responsibility become a voluntary act," *id.*, the intermediate appellate court then proceeded to draw the conclusion that, "viewing the evidence in the light most favorable to [the respondents], one might reasonably infer that Martin, with no clear and reasonable alternative, was compelled to use the walkway in order to complete the delivery for her employer." *Id.* at 665, 666 A.2d at 883. The court reasoned:

To complete her assignment successfully, [Martin] needed to make delivery to a particular office inside the building; and, in order to do that, she had to traverse an icy path leading to and from the building's sole entrance. A decision not to walk over the icy ground leading to the building would have resulted in Martin's failure to complete her task. Hence, it is arguable that Martin was deprived of a clear and reasonable choice, and therefore it becomes a question of fact whether she chose to act, or acted voluntarily.

*Id.* at 661, 666 A.2d at 881. To reach this conclusion, the Court of Special Appeals analyzed our decisions in *Schroyer* and *Burke*, concluding that an employee's "job requirements" necessarily determine and control the issue. *Id.*[3] Stated dif-

---

3. By so construing *Schroyer v. McNeal*, 323 Md. 275, 592 A.2d 1119 (1991) and *Burke v. Williams*, 244 Md. 154, 223 A.2d 187 (1966), as it turns out, the Court of Special Appeals set the stage for its ostensible adoption of "the modern employee's dilemma," which advances the view that an employee does not voluntarily or unreasonably assume the risk of a danger during the course of employment because "the competitiveness and pragmatism" of the real world workplace compel employees to either perform risky tasks or suffer various adverse employment consequences, ranging from termination to more subtle sanctions. *Varilek v. Mitchell Eng'g Co.*, 200 Ill.App.3d 649, 146 Ill.Dec. 402, 558 N.E.2d 365 (1990). Courts that have subscribed to this view have held "that an injured worker does not have to put in evidence that he would have been fired if he had not done his job in order to show that his decision ... was not voluntary under the doctrine of assumption of risk." *Varilek*, 146 Ill.Dec. at 413, 558 N.E.2d at 376. *See also Suter v. San Angelo Foundry & Mach. Co.*, 81 N.J. 150, 406 A.2d 140, 148 (1979); *Cremeans v. Willmar Henderson Mfg. Co.*, 57 Ohio St.3d 145, 566 N.E.2d 1203, 1206–07 (1991), citing *Johnson v. Clark Equip. Co.*, 274 Or. 403, 547 P.2d 132, 140–41 (1976); *Brown v. Quick Mix Co.*, 75 Wash.2d 833, 454 P.2d 205, 208 (1969); *Kitchens v. Winter Co. Bldrs.*,

ferently, the court adopted the proposition that an employee, who, in the fulfilment of a job requirement, encounters the risk of a known danger does not act voluntarily because he or she will not have been given "a clear and reasonable choice either to act or not act." *Id.* We do not agree.

In *Schroyer,* the plaintiff slipped and fell on an ice and snow covered sidewalk, while carrying her belongings to her hotel room. Analyzing the facts of that case, the Court of Special Appeals here determined that we held that the plaintiff's "actions were voluntary because she was not acting for her employer, but rather, was acting for her own benefit." *Martin,* 106 Md.App. at 659, 666 A.2d at 880. Consequently, the intermediate appellate court concluded that "Martin, unlike [the plaintiff in *Schroyer* ] did not voluntarily encounter the risk because she was not acting for her own convenience; rather, at the time of her injury, she was on a mission for her employer." *Id.* at 660, 666 A.2d at 880.

The court conducted a similar analysis with respect to *Burke,* the purpose of which was, again, to define the point at which the performance of employment responsibilities becomes a voluntary act. In *Burke,* the plaintiff, a deliveryman was injured while making a delivery of kitchen sink tops to the defendant's partially constructed house. Upon arriving at the

---

*Inc.,* 161 Ga.App. 701, 289 S.E.2d 807, 809 (1982); *Beacham v. Lee–Norse,* 714 F.2d 1010, 1014–1015 (10th Cir.1983); *Rhoads v. Service Mach. Co.,* 329 F.Supp. 367, 381 (E.D.Ark.1971).

The Court of Special Appeal's endorsement of "the modern employee's dilemma" prompted it to conclude in this case:

It would be unreasonable to require that Martin show exactly what would have happened to her had she refused to make her delivery. She expressed the belief that she could possibly have lost her job because, if the delivery was not made, her employer might have lost the account. That evidence was not contradicted; her concern was not shown to be unreasonable as a matter of law.

*Martin v. ADM Partnership, Inc.,* 106 Md.App. 652, 663, 666 A.2d 876, 882 (1995). Although it is not necessary for us to address the validity of "the modern employee's dilemma," we, however, as discussed *infra,* point out that an employee's purely subjective belief that the refusal to assume a risk would result in negative consequences, without more, does not create a factual dispute, necessitating a determination by the trier of fact.

house, the owner informed the plaintiff that he would have to carry the sink tops up two foot boards over an excavation. After a couple of safe trips, the plaintiff slipped and fell into the excavation. We held that the plaintiff voluntarily assumed the risk of being injured, stating:

The rule is that when a plaintiff in a personal injury action becomes aware of a previously created risk and voluntarily chooses to put up with the situation—where as here a workman confronted with a slippery walkway nevertheless chose to use it—then his willingness to take a chance is implied and he would be barred from recovering for a risk he chose to assume.

*Burke*, 244 Md. at 157–58, 223 A.2d at 189 (1966) (citing Prosser, Torts (1964 ed.) § 67; Restatement (Second), Torts, § 496). We also responded to the plaintiff's argument that, because the defendant provided him with "only one means of ingress and egress to and from the house and that the economic necessity of keeping his job and being discharged for failure to deliver the sink tops," he did not voluntarily assume the risk. *Id.* at 158, 223 A.2d at 189. As to that, we said:

[t]he contention is clearly without merit because there is no evidence that the owners of the house, or anyone else, ever demanded that the appellant use the walkway against his will. Nor is there any evidence that [the plaintiff's] job would have been in jeopardy had he left the sink tops on the construction site instead of taking them into the house.

*Id.* It is this passage from which the Court of Special Appeals was able to formulate a distinction between *Burke* and the case *sub judice*. 106 Md.App. at 661, 666 A.2d 876. Thus, it inferred that "[i]n order to complete the job assignment successfully, the plaintiff in *Burke* had only to deliver sink tops to the construction site" and concluded that, "[b]y taking it upon himself to move the sinks into the house through the carport, the plaintiff chose to undertake a voluntary activity that subjected him to an assumption of risk defense." *Id.*

The basis for our decision in *Schroyer*, was that the plaintiff, fully aware of the risk involved in traversing an ice-covered

walkway, made a voluntary decision to take that risk. Her employer, her employment, its scope, or what, if any, connection they had to the incident were neither mentioned nor, as far as the opinion makes clear, considered, even peripherally. All the facts showed that, when she arrived at the hotel, the plaintiff "observed that the area in front of, and surrounding, the main lobby area, where hotel guests registered, had been shoveled and, thus reasonably clear of ice and snow." *Schroyer*, 323 Md. at 278, 592 A.2d at 1120. After registering, the plaintiff drove her vehicle from the main entrance to an area of the hotel that was covered with ice and unplowed snow, but was convenience closer to her room. She noticed that the sidewalk had not been shoveled, but nevertheless, she chose to cross the ice and snow covered sidewalk "carefully." Her first trip was successful, but, on her second trip, she slipped and fell. We held that

> [plaintiff] was fully aware of the dangerous condition of the premises. She knew that the area was ice and snow covered and that the ice and snow were slippery. Nevertheless, she parked in the area and, notwithstanding, according to her testimony, that she proceeded carefully, she took a chance and walked over the ice and snow covered parking lot and sidewalk because she did not think it was "that" slippery.
>
> It is clear, on this record, that [plaintiff] took an informed chance. Fully aware of the danger posed by an ice and snow covered parking lot and sidewalk, she voluntarily chose to park and traverse it, albeit carefully, for her own purposes, i.e. her convenience in unloading her belongings.

\* \* \* \*

> With full knowledge that the parking lot and sidewalk were ice and snow covered and aware that the ice and snow were slippery, [plaintiff] voluntarily chose to park on the parking lot and walk across it and the sidewalk, thus indicating her willingness to accept the risk and relieving the [defendants] of responsibility for her safety.... We hold, as a matter of law, that [plaintiff] assumed the risk of her own injuries.

*Id.* at 288–89, 592 A.2d at 1125–26. Hence, our decision is clear: the plaintiff, charged with the knowledge of the existing icy condition of the walkway, voluntarily chose to encounter the risk. She, therefore, intentionally, knowingly and voluntarily assumed the risk of the danger that caused her injuries. There simply was no evidence, in that case, to suggest that the plaintiff's employment was adversely affected and, therefore, we did not address that issue.

The Court of Special Appeals's interpretation of *Burke* is similarly flawed. This Court did not hold that the plaintiff's job requirements established the point at which "carrying out an employment responsibility become[s] a voluntary act." 106 Md.App. at 661, 666 A.2d at 881. Rather, all we held was that, on the facts of the case, there was no evidence to show that plaintiff was not acting on his own volition or free will, or that his employment would have been in jeopardy had he refused to use the walkway to make the delivery, thus, negating a finding of assumption of the risk. *See Gibson*, 245 Md. at 422, 226 A.2d at 276 (The arguments in *Burke* were "rejected . . . because there was no showing that the act of the plaintiff which produced the harm was done by him against his will."). To be sure, the Court did draw a distinction between the possible points of delivery, at the construction site and in the partially constructed building; however, there is nothing in the opinion to suggest that only the plaintiff's subjective belief that an adverse impact on employment would occur would have been taken as "evidence." That seems unlikely since, as we have already seen, the standard to be applied is an objective one. *Schroyer*, 323 Md. at 283, 592 A.2d at 1123.

*Burke* also seems to be a stronger case than the instant one for holding that the plaintiff did not assume the risk of injury. There, unlike here, the plaintiff/delivery-person was specifically asked by the defendant to do the very act that resulted in his injuries. That fact was not sufficient, in the face of the lack of evidence that he did not act voluntarily, that he did so against his free will or because of economic necessity, *see Velte v. Nichols*, 211 Md. 353, 127 A.2d 544 (1956) (purchaser assumed the risk when he climbed a ladder, although he was

told to do so by the merchant), to allow the plaintiff to avoid the defense of assumption of the risk. Here, as well, there is no evidence that Martin's act of traversing the ice and snow covered parking lot and walkway was not volitional. Nor does the evidence support a conclusion that the appellants placed Martin in the position of having no choice but to traverse the ice and snow covered walkway:

> [DEFENSE COUNSEL]: You could have climbed in that truck, and radioed in, said Darryl, I think it is too dangerous here. Tell these people they are going to have to come out and get the blueprints or they are not getting them today. Correct ?
>
> MARTIN: I could have.

Additionally, other than Martin's subjective belief that she could have been terminated, and thus that she acted from economic necessity, there is no evidence from which a reasonable jury could have so concluded. Neither Martin's employer nor the defendant ever demanded that she traverse the ice and snow covered walkway against her will.

> [PLAINTIFF'S COUNSEL]: Okay. Could you have gotten back into your car and driven away and not made your delivery that day?
>
> MARTIN: No.
>
> Q I am sorry?
>
> A No, I could not.
>
> Q And why is that?
>
> A Because I could have caused them losing the contract with the company they already had. I could have lost my job.
>
> Q Did anyone ever tell you that you would lose your job if you didn't make a delivery?
>
> \* \* \* \*
>
> A No, not that I can recall or not that I remember.

\* \* \* \*

[DEFENSE COUNSEL]: Okay. Ma'am, you indicated you had some concern, but the truth is nobody ever told you [that] you would be fired if you hadn't brought the blueprints there, isn't that correct?

MARTIN: No, not that I know of.

Q Well, that is what I am asking you. Nobody ever told you that you were going to be fired if you didn't—[take] those blueprints in, correct?

A Correct.

Q And nobody told you these blueprints had to get there or somebody is going to lose a contract or whether this business was going to go bankrupt?

A I am not sure.

Q Okay. But you can't tell this jury under oath that anybody ever told you that that day

A Well no, I never—no.

Despite this testimony, the respondents, nevertheless, contend that the Court of Special Appeals properly determined that a dispute of fact exists as to whether Martin assumed the risk of walking across the ice and snow covered parking lot and entrance walkway as a result of being coerced by the economic necessity of securing a service contract for her employer and for her continued employment. Determining whether Martin acted voluntarily when she encountered the ice covered walkway or was responding to economic necessity requires proof of her state of mind. Ordinarily, that proof is supplied by direct evidence, *i.e.*, testimony by the person whose state of mind is at issue, or by circumstantial evidence, *i.e.*, testimony concerning facts and circumstances from which the state of mind may be inferred. While the testimony of the affected person ordinarily is sufficient, without more, to support a verdict and thus to generate a jury question, as, for example, when the issue is the person's intent, *see, e.g., Binnie v. State*, 321 Md. 572, 581, 583 A.2d 1037, 1041 (1991) or what a defendant claiming self defense felt or believed, *see, e.g., State v. Martin*, 329 Md. 351, 367,

619 A.2d 992, 999 (1993), where the proof of the state of mind itself depends upon the proof of another fact, the witness's testimony alone will not suffice. There must, in addition, be some evidence of that critical fact. Otherwise, speculation or a theoretical or academic possibility will substitute for evidence. As the preceding passage demonstrates, there is not a shred of evidence from which Martin's concern for her job if the delivery were not made can be inferred.

The respondents argue also that the dictates of *Gibson* provide that "the compulsion or coercion experienced by a plaintiff may emanate from a non-defendant source for an act to be considered involuntary." Thus, although the petitioners are not the source of the coercion of which Martin complains, they assert, the petitioners may nevertheless be liable for the injuries Martin sustained while traversing the parking lot and walkway.

In *Gibson*, the defendant, the driver of a fuel oil delivery truck, was unable to connect the fuel hose to the fuel inlet at the plaintiff's house due to the accumulation of snow in the plaintiff's driveway, which prevented the defendant from positioning his truck in a manner that would facilitate the connection. As a result, the defendant "indicated" to the plaintiff that it would be necessary for the plaintiff to come out and pull the hose approximately one hundred feet from the oil truck to the house. While pulling the fuel hose, the plaintiff, a fiftyfive year old man with no experience in delivering fuel, suffered a heart attack. We held that the plaintiff had voluntarily assumed the risk of his injuries, observing:

> The plaintiff takes a risk voluntarily (within the meaning of the present rule) where the defendant has a right to face him with the dilemma of "take it or leave it"—in other words, where [the] defendant is under no duty to make the conditions of their association any safer than they appear to be. In such a case it does not matter that plaintiff is coerced to assume the risk by some force not emanating from defendant, such as poverty, dearth of living quarters, or a sense of moral responsibility.

*Gibson,* 245 at 422–23, 226 A.2d at 276 (quoting 2 Harper and James, *Torts,* § 21.3 at 1174 (1956)). From this observation, the respondents contend that this Court "acknowledged the contractual relationship between the plaintiff and defendant [in Gibson]" and found that, because the defendant "did not have a tort-like obligation" to the plaintiff and was " 'under no duty to make the conditions of their association safer than they' were," the defendant "could not be held responsible for the coercive element caused by the weather conditions." Therefore, the respondents argue:

> [I]t follows that in cases where the defendant **does have** a duty to make conditions of the relationship between the plaintiff and defendant safer than they appear to be, the rule does not apply and the coercion may emanate from sources other than the defendant.
>
> * * * *
>
> It [further] follows then that since the Petitioners in this case owed a duty to Respondent[s] in the first place, the source of the coercion must not necessarily arise from the Defendant[s] for involuntariness to be established. In essence, since Petitioners breached their tort-based duty owed to Ms. Martin, *Gibson* suggests that the party(ies) responsible for breaching their tort-based duties may also be responsible for the coercive element experienced by the plaintiff no matter where it emanates from.

As we discussed *supra,* assumption of the risk is an affirmative defense, which "rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from a particular risk." *Gibson* 245 Md. at 421, 226 A.2d at 275 (quoting Prosser, *Torts,* § 55 at 303 (2d ed.1955)). Unlike contributory negligence, the assumption of risk defense exists independently of the conduct of another person, whether the defendant or a third party. Therefore, the existence of a defendant's duty is not an issue because that speaks to the defendant's negligence, which is not required to establish assumption of risk. *See Schroyer,* 323 Md. at 282, 592 A.2d at 1123 ("[T]he critical

distinction between contributory negligence and assumption of risk is that, in the latter, by virtue of the plaintiff's voluntary actions, any duty the defendant owed the plaintiff to act reasonably for the plaintiff's safety is superseded by the plaintiff's willingness to take a chance.").

In *Gibson*, the plaintiff's claim was barred by the defense of assumption of risk, not because the defendant owed no "duty" to the plaintiff, but because "the plaintiff had intentionally and voluntarily exposed himself to a known danger." *Gibson*, 245 Md. at 422, 226 A.2d at 276.

> [The plaintiff] must be taken to have been aware of the danger of slipping on snow and of the burden the snow would add to physical effort taken in it; he must be charged with knowledge of the heaviness of a hose of large diameter in which there was fuel oil and of the possible physical effects on a man of his age of the effort to lif[t] it or drag it through the snow. If he did not appreciate this sooner, he must have when he took hold of the hose. Yet he voluntarily undertook to take his chance of harm from the effort of pulling it to the house. This voluntary undertaking in the environment and circumstances present freed the defendants as a matter of law from liability for harm which might flow from the undertaking.

*Id.* at 422, 226 A.2d at 275–76. Thus, the plaintiff in *Gibson*, similar to the plaintiffs in *Burke* and in the instant case, exercised his own volition in encountering a known danger, and thus voluntarily assuming the risks it entails. As we have stated in earlier cases involving the assumption of risk defense, "where the facts are not in dispute and the plaintiff intentionally and voluntarily exposed [her]self to a known danger, we [will] sustain[ ] the granting of a summary judgment or the direction of a verdict." *Burke*, 244 Md. at 158, 223 A.2d at 189; *see also Gibson*, 245 Md. at 422, 226 A.2d at 276; *Schroyer*, 323 Md. at 288–89, 592 A.2d at 1126; *Evans v. Johns Hopkins Univ.*, 224 Md. 234, 239, 167 A.2d 591, 594 (1961); *Finkelstein v. Vulcan Rail & Const. Co.*, 224 Md. 439, 441, 168 A.2d 393, 394 (1961).

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.

ELDRIDGE, J., dissents.

ELDRIDGE, Judge, dissenting.

For the reasons set forth in Judge Alpert's opinion for the Court of Special Appeals, *Martin v. ADM*, 106 Md.App. 652, 666 A.2d 876 (1995), I would affirm the judgment of the Court of Special Appeals.