**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HENRY ARTIS,
<u>Plaintiff-Appellant,</u>

v.

No. 97-1122

BILDON COMPANY; HOLMAN BOILER
REPAIR,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-95-3098-PJM)

Argued: March 2, 1998

Decided: March 31, 1998

Before WILKINSON, Chief Judge, and WILLIAMS and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael Samuel Rosier, ROSIER & ASSOCIATES,
Oxon Hill, Maryland, for Appellant. Thomas Vincent McCarron,
SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellee
Bildon Company; Kenneth Gordon Stallard, THOMPSON,
O'DONNELL, MARKHAM, NORTON & HANNON, Washington,
D.C., for Appellee Holman Boiler Repair.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Henry and Elsie Artis brought suit against Bildon, Inc. and Holman Boiler Repair and Plumbing, Inc., alleging that injuries Henry Artis suffered when he fell into a trench filled with hot condensate liquid resulted from defendants' negligence. Defendants assert that Henry Artis voluntarily assumed the risk of injury when he undertook to pump the liquid from the trench. We hold that this affirmative defense bars plaintiffs' recovery, so we affirm the judgment of the district court.

I.

Henry Artis was injured when he fell into a trench full of hot condensate liquid. Holman, under subcontract from Bildon, dug the trench in the course of repairing steam and condensate lines running between two buildings at the Walter Reed Army Medical Center, where Artis was employed. The trench filled with liquid when Holman's excavations uncovered a leak in one of the lines. On December 29, 1992, Artis was instructed by his employer to pump out the trench in order to prevent the hot liquid from overflowing and reaching a nearby building. In the process of deploying a water pump, Artis fell into the trench and was burned.

Artis and his wife, residents of Washington, D.C., filed this diversity action in federal district court against Bildon and Holman, both Virginia corporations. The Artises alleged that Bildon and Holman negligently allowed the trench to remain filled with condensate liquid and negligently failed to place barriers around the trench. The district court granted defendants' motion for summary judgment, finding that Henry Artis' assumption of risk and contributory negligence barred recovery. The Artises now appeal.

II.

Under Maryland law,**1** to establish assumption of risk Bildon and Holman must show that Henry Artis "(1) had knowledge of the risk of danger, (2) appreciated that risk and (3) voluntarily exposed himself to it." Liscombe v. Potomac Edison Co. , 495 A.2d 838, 843 (Md. 1985) (citation omitted). Artis' own admissions reveal that "no genuine issue as to any material fact" remains and provide the evidence defendants need to make this showing. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Artis admitted that he was aware the trench was filled with hot liquid. Clearly, then he had knowledge of the risk of danger posed by falling into the trench.

Artis also appreciated the risk. "[W]hen it is clear that a person of normal intelligence in the position of the plaintiff must have understood the danger, [this] issue is for the court." Schroyer v. McNeal, 592 A.2d 1119, 1123 (Md. 1991). He knew the liquid in the trench was hot, and he knew he would be burned if he fell in. The Maryland Court of Appeals recently characterized "the danger . . . of falling through unguarded openings" as a risk "which anyone of adult age must be taken to appreciate." ADM Partnership v. Martin, 702 A.2d 730, 734 (Md. 1997) (citation omitted). Artis argues that he could not appreciate the risk of falling in this case because there were no barriers marking the edge of the trench. On the contrary, the absence of any delineation of the trench should have been a red flag to Artis, putting him on notice that he was, literally, not on solid ground.

Finally, we conclude that Artis voluntarily exposed himself to this danger. The Maryland Court of Appeals considered the"`voluntariness' element of the assumption of risk defense" in Martin, 702 A.2d

_____

**1** Maryland law applies because Henry Artis' accident occurred at the Walter Reed Army Medical Center, located in Maryland. This case arose in federal district court in Maryland, so we look to Maryland's choice of law rules. See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496 (1941). Maryland courts select the law of the place of the tort to govern tort actions. E.g., Chambco v. Urban Masonry Corp., 659 A.2d 297, 299 (Md. 1995).

at 732. That court explained "that, in order for a plaintiff to assume voluntarily a risk of danger, there must exist `the willingness of the plaintiff to take an informed chance'; there can be no restriction on the plaintiff's freedom of choice either by the existing circumstances or by coercion emanating from the defendant." Id. at 735 (citation omitted). The plaintiff in Martin claimed that she feared her employer, and therefore, she would suffer adverse economic consequences if she did not undertake the risky task she was assigned. But she admitted that nobody ever told her she would be fired, or her employer would lose money, if she refused to complete the assignment. Id. at 738. In the absence of such communication, the Martin court found no evidence that plaintiff's acts were not volitional and held that the voluntariness element of assumption of the risk was satisfied.

Martin thus instructs that unless there is some "evidence to show that [Artis] was not acting on his own volition or free will, or that his employment would have been in jeopardy had he refused" to pump out the trench, his acts will be deemed voluntary. Id. at 737-38. Here there is no such evidence. In fact, Artis admitted that he was not forced to pump out the trench and that he did not fear any negative consequence from refusing to perform this dangerous task:

> Q Is it fair to say, then, that your relationship with your supervisor was fairly good?
>
> A Yes.
>
> Q Now, when your supervisor called you to go down to pump out the pit, you felt free to express to him, at that time, any concerns you had about the safety of performing that task, didn't you?
>
> A Yes.

* * *

> Q At any point, did your supervisor tell you that if you didn't pump out this trench, you would be fired?

4

A No, sir.

Q At any point in time, did your employer ever threaten you with disciplinary sanctions if you refused to pump out the trench?

A No, sir.

Q Did you feel that if you had suggested to your employer or your supervisor, safety precautions, perhaps, another type of pump, perhaps, any other precautions, that your employer would get mad at you and sanction you or fire you?

A No, sir.

Q That is not something you feared at all?

A No.

In the face of the admission that he was not threatened or otherwise coerced, Artis cannot now dispute that he voluntarily assumed the risk of the injury that befell him.

III.

For the foregoing reasons, we affirm the judgment of the district court.[2]

AFFIRMED

_____

[2] In Maryland, assumption of risk"functions as a complete bar to recovery because `it is a previous abandonment of the right to complain if an accident occurs.'" Martin, 702 A.2d at 734 (citation omitted). Thus we need not address the alternative defense of contributory negligence in order to affirm the district court's grant of summary judgment to the defendants.