934 A.2d 27

AMERICAN POWERLIFTING ASSOCIATION, et al.

v.

Christopher COTILLO.

No. 6, Sept. Term, 2007.

Court of Appeals of Maryland.

Oct. 16, 2007.

J. Michael Sloneker (Jason P. Beaulieu, Anderson, Coe & King, LLP, Baltimore; Michael J. Mann, Towson), on brief, Samuel N. Shapiro (Jeffrey R. Schmieler, Saunders & Schmieler, P.C., Silver Spring), on brief for Petitioners.

Kimberly A. Alley, Littleton, MA, on brief, Henry L. Belsky (Schlachman, Belsky & Weiner, P.A., Baltimore), on brief for Respondent.

Argued Before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER, (Retired, Specially Assigned) and DALE R. CATHELL, (Retired, Specially Assigned), JJ.

GREENE, Judge.

This matter arises from a civil action filed in the Circuit Court for Calvert County by the respondent, Christopher Cotillo, against the petitioners, collectively, William Duncan, the American Powerlifting Association ("the APA"), and the Board of Education of Calvert County ("the Board"), for injuries Mr. Cotillo sustained while participating in a power-lifting competition. Mr. Cotillo asserted various negligence claims, and both sides filed motions for summary judgment. The Circuit Court granted the petitioners' motions for summary judgment on the grounds that Mr. Cotillo assumed the risk of his injuries. On appeal, the Court of Special Appeals affirmed the judgment of the Circuit Court in part and reversed in part, holding that summary judgment was proper as to all claims except the claim that the spotters were negligently trained.

The petitioners ask this Court to decide whether the Circuit Court erred in finding that Mr. Cotillo's claim, that the spotters were negligently instructed, was barred by assumption of the risk, in light of the trial court's additional determination that Mr. Cotillo assumed the risk of injury during a lift, and that Mr. Cotillo assumed the risk that the spotters would fail to protect him in the event of a failed lift.

We shall hold that there is no genuine issue of material fact that Mr. Cotillo assumed the usual and foreseeable risks of the sport when he voluntarily entered a powerlifting competition, and therefore summary judgment was appropriate. There is no genuine dispute that the immediate cause of the respondent's injury was his attempt to qualify by bench pressing 530 pounds. As a result, whether any of the petitioners were negligent in failing to prevent the respondent's injury is of no consequence. Furthermore, any dispute of fact as to whether the spotters were negligent is immaterial because their mere negligence is insufficient to support a finding of enhanced risk.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 8, 2003, Mr. Cotillo, a powerlifter with ten years of experience, was injured during the 2003 Southern Maryland Open Bench Press & Deadlift Meet ("the Meet"), when he attempted to lift 530 pounds. The Meet was sanctioned by the APA, and held at Patuxent High School, which operates under the jurisdiction of the Board. It was organized by Mr. Duncan, the faculty sponsor of Patuxent High School's weightlifting club, and Scott Taylor, APA president.

Before the Meet, the lifters were informed that they could use their own spotters.[1] Mr. Cotillo did not exercise this option,[2] electing instead to use the spotters provided by the organizers of the Meet. Mr. Duncan recruited Chris Smith and Chris Blair, Patuxent High School students, to act as spotters during the Meet. At the time of the Meet, Mr. Smith was fifteen years old, approximately five feet and eight to ten

---

1. Spotters are present during weightlifting competitions, just as they often are in practice, to assist a participant in the event of a failed lift. Generally, one spotter is positioned on each end of the lift bar, and each spotter keeps his hands within inches of the bar so that, if the participant is having difficulty with the bar or is in danger of dropping the bar, the spotters can act quickly to take the bar from the participant. If a spotter touches the bar for any reason, that lift is disqualified.

2. Members of Mr. Cotillo's gym participated in the Meet and were available, on his request, to serve as spotters for his lifts. Such a practice is not uncommon at meets.

inches tall, and 180 pounds. Mr. Blair, at the time of the Meet, was fourteen years old, approximately six feet tall, and weighed 260 pounds. Both spotters had some weightlifting experience.

On the morning of the Meet, Mr. Duncan spoke with the spotters and told them that, while they should keep their hands close to the bar, they could not touch the bar because it would disqualify the lift. Mr. Taylor further instructed the spotters that if the lifter were to hesitate, without making any downward motion with the bar, they should wait for the referee's instruction to grab the bar. If the lifter were to hesitate and the bar were to come down, Mr. Taylor instructed the spotters that they should not wait for the referee's instruction, but instead grab the bar.

During the Meet, Mr. Cotillo wore a "Karin's Xtreme Power" double denim bench shirt, which allowed him to lift approximately 150 pounds more than he could have without the shirt. The spotters were positioned on either side of the bar, and Mr. Duncan was positioned in the middle. Mr. Cotillo's first two lifts in the Meet, using the spotters, were uneventful. On his third lift, Mr. Cotillo was attempting to lift 530 pounds. Mr. Cotillo brought the bar down without any trouble. As he began to lift it, he had some difficulty,[3] at which point Mr. Blair testified that he began to move his own hands closer to the bar. The judge instructed the spotters to grab the bar, but as the spotters closed in, the bar came down, striking Mr. Cotillo in the jaw. The entirety of these events happened within a matter of seconds. As a result of the incident, Mr. Cotillo suffered a shattered jaw, a laceration, and damage to several teeth, requiring treatment.

On January 15, 2004, the respondent filed a complaint in the Circuit Court for Calvert County. In his amended complaint, Mr. Cotillo asserted various claims of negligence against Mr.

---

**3.** During Mr. Cotillo's third lift, Mr. Duncan heard Mr. Cotillo's shirt tear. Mr. Cotillo stated that he did not know that his "Karin's Xtreme Power" double denim bench shirt had ripped until after his failed lift attempt.

Duncan, the APA, and the Board.[4] Each of the parties filed motions for summary judgment and on February 3, 2006, the court denied the respondent's motion and granted the petitioners' motions, on the grounds that Mr. Cotillo assumed the risk of his injuries.

Mr. Cotillo filed an appeal with the Court of Special Appeals, which affirmed in part and reversed in part The Court of Special Appeals held that summary judgment was properly entered on all claims except the negligence claim grounded in allegations of improper preparatory instruction of the spotters. The intermediate appellate court reasoned that because Mr. Cotillo did not know the spotters were improperly trained,[5] and because their improper training presented an enhanced risk not normally incident to the sport, Mr. Cotillo could not have assumed the risk. *Cotillo v. Duncan,* 172 Md.App. 29, 54, 912 A.2d 72, 86–87 (2006).

The APA and the Board filed petitions for writ of certiorari in this Court, which we granted.[6] *American Powerlifting v. Cotillo,* 398 Md. 313, 920 A.2d 1058 (2007).

---

**4.** The APA and the Board filed a third party complaint against Karins Xtreme Power, LLC, the manufacturer of the double denim bench shirt, alleging that the shirt Mr. Cotillo wore was defective. The third party complaint was subsequently dismissed.

**5.** The respondent contends that the spotters were told not to touch the bar until they were signaled by the judge. The spotters were also instructed that if they touched the bar during the lift, that lift would be disqualified. The Court of Special Appeals noted that it was unclear from the record whether the spotters were improperly trained, but resolved all reasonable inferences in the respondent's favor for purposes of reviewing the grant of summary judgment. *Cotillo v. Duncan,* 172 Md.App. 29, 54 n. 13, 912 A.2d 72, 87 n. 13 (2006).

**6.** The petitioner APA presented the following question in its petition for writ of certiorari:

In light of the holding that Christopher Cotillo ("Cotillo") assumed the risk as a matter of law of being injured by the bar during a lift, assumed the risk as a matter of law that the spotters would fail to protect him in the event of a failed lift and assumed the risk as a matter of law that the spotters would be negligently positioned, did the Trial Court err in finding that Cotillo's claims for negligent instruction of the spotters were barred?

## DISCUSSION

### I. Parties' Arguments

The petitioners argue that the Court of Special Appeals erred by holding that Mr. Cotillo could not have assumed the risk that the spotters would be negligently trained. They contend that the doctrine of assumption of the risk operates independently from the law of negligence, and therefore it is irrelevant whether they may have been negligent in training the spotters. The petitioners reason that holding otherwise would create a problem of circular logic, enabling plaintiffs to escape an assumption of the risk defense by claiming that they could not have anticipated the defendants' negligence.

The petitioners further argue that the Court of Special Appeals erred by failing to consider the video footage of the event, which the Circuit Court considered and was part of the record submitted to the Court of Special Appeals.

The respondent argues that the petitioners were negligent in training the spotters, and that their negligent training presented an enhanced risk to Mr. Cotillo that he could not have assumed. The respondent contends that he could not have assumed the particular risk that the spotters would be negligently trained because assumption of the risk requires that Mr. Cotillo have particular knowledge of the risks he assumes, and he had no prior knowledge of the training the spotters received before he encountered the risk.

---

The petitioner Board presented the following questions in its petition for writ of certiorari:

1. Whether the Court of Special Appeals' Opinion is inconsistent with well-established Maryland law on assumption of risk and that doctrine's independence from a defendant's alleged negligence.

2. Whether the Court of Special Appeals failed to consider (a) the video footage of the event; and (b) the Circuit Court's determination that no causation exists because reasonable persons could not differ in concluding that the speed at which the 530 lbs. bar came crashing down made prevention of the injuries impossible by human spotters.

3. Whether the Court of Special Appeals' Opinion, from a public policy standpoint, jeopardizes the existence of sports programs and other extracurricular activities in the State, including those funded and operated by public and independent schools.

Further, the respondent contends that the alleged negligent training of the spotters enhanced the risk to Mr. Cotillo, and that this increased risk was not a risk inherent in the sport. Because the respondent believes that this increased risk creates a dispute as to whether Mr. Cotillo knowingly and voluntarily confronted a particular risk, he argues that summary judgment was inappropriate.[7]

Finally, the respondent contends that the Court of Special Appeals properly considered the video footage of the incident, and that further interpretation of the video is a matter for the trier of fact.

## II. Standard of Review

We are asked in the case *sub judice* to review the Circuit Court's entry of summary judgment and we do so *de novo*. *Educational Testing Serv. v. Hildebrant*, 399 Md. 128, 139, 923 A.2d 34, 40 (2007). In a review of a grant of summary judgment, our two-part analysis determines first whether there is a genuine dispute of material fact, and then whether the moving party is entitled to judgment as a matter of law. *Id.* Where a dispute regarding a fact can have no impact on the outcome of the case, it is not a dispute of material fact such that it can prevent a grant of summary judgment. *Miller v. Bay City Property Owners Ass'n, Inc.*, 393 Md. 620, 631, 903 A.2d 938, 945 (2006). For purposes of reviewing a grant of summary judgment, we construe the facts before this Court in the light most favorable to the non-moving party. *Todd v. MTA*, 373 Md. 149, 155, 816 A.2d 930, 933 (2003).

---

7. In his brief, the respondent contends that the Local Government Tort Claims Act, Md.Code (1974, 2006 Repl.Vol.), §§ 5–301 *et seq.* of the Courts & Judicial Proceedings Article, applies to this case. The petitioner APA also discusses the financial consequences of holding school boards accountable for sports injuries in its petition for writ of certiorari. Because we hold here that Mr. Cotillo's claims are barred by assumption of the risk, it is unnecessary to decide whether the Local Government Tort Claims Act applies to the case *sub judice*.

### III. Assumption of the Risk

Assumption of the risk is a doctrine whereby a plaintiff who intentionally and voluntarily exposes himself to a known risk, effectively, consents to relieve the defendant of liability for those risks to which the plaintiff exposes himself. *ADM Partnership v. Martin*, 348 Md. 84, 91, 702 A.2d 730, 734 (1997) (quoting *Rogers v. Frush*, 257 Md. 233, 243, 262 A.2d 549, 554 (1970)). Assumption of the risk is a defense that completely bars any recovery by the plaintiff. *Crews v. Hollenbach*, 358 Md. 627, 640, 751 A.2d 481, 488 (2000). The doctrine "negates the issue of a defendant's negligence by virtue of a plaintiff's previous abandonment of his or her right to maintain an action if an accident occurs." *McQuiggan v. Boy Scouts of Am.*, 73 Md.App. 705, 710, 536 A.2d 137, 139 (1988) (citing *Pfaff v. Yacht Basin Co.*, 58 Md.App. 348, 473 A.2d 479 (1984)). In Maryland, there are three requirements that the defendant must prove to establish the defense of assumption of the risk: (1) the plaintiff had knowledge of the risk of danger; (2) the plaintiff appreciated that risk; and (3) the plaintiff voluntarily confronted the risk of danger. *ADM Partnership*, 348 Md. at 90–91, 702 A.2d at 734. In determining whether a plaintiff had the requisite knowledge, an objective standard is applied. *Crews*, 358 Md. at 644, 751 A.2d at 490. Although the determination as to whether a plaintiff has assumed a risk will often be a question for the jury, "where it is clear that any person of normal intelligence in his position must have understood the danger, the issue must be decided by the court." *Gibson v. Beaver*, 245 Md. 418, 421, 226 A.2d 273, 275 (1967) (quoting W. Prosser, Handbook of the Laws of Torts § 55 at 310 (2nd ed.)); *see also Crews*, 358 Md. at 644, 751 A.2d at 490.

The question of whether the plaintiff had the requisite knowledge and appreciation of the risk in order to assume the risk is determined by an objective standard. *Gibson*, 245 Md. at 421, 226 A.2d at 275. By this standard, "a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him." *Id.* In this case, Mr. Cotillo

knew and appreciated the risk of danger, and voluntarily confronted that risk. At the time of his injury, Mr. Cotillo had been powerlifting for approximately 10 years. Prior to the Meet, he had successfully competed in several competitions at the local, national and international level, while setting several records in the process. Mr. Cotillo had also signed documents at past competitions containing waivers, which indicated the risks of participating in powerlifting, including the risk of equipment malfunction.[8] These facts show that Mr. Cotillo was aware of the risk of injury by participating in a powerlifting competition.

Not only did Mr. Cotillo have direct knowledge of the inherent risks of powerlifting, but it is clear to any person of normal intelligence that one of the risks inherent in powerlifting is that the bar may fall and injure the participant. That this is clear to any person of normal intelligence is evidenced by the fact that the nature of the sport is to attempt to lift great amounts of weight above the lifter's body. If the participant were to fail to lift the weight, the obvious conclusion is that gravity would cause the bar to come down on the person beneath it. The apparent necessity of spotters in the sport only reinforces the inescapable conclusion that there is a risk that the bar might fall and injure the participant.

We find persuasive the reasoning of the court in *Lee v. Maloney*, 180 Misc.2d 992, 692 N.Y.S.2d 590, 591–92 (Sup.Ct. 1999), *aff'd*, 270 A.D.2d 689, 704 N.Y.S.2d 729 (2000), concluding that the risk of a lift bar falling and striking a participant in a weightlifting competition is " 'perfectly obvious,' from the nature of the activity itself." *Id.* In *Lee*, a weightlifter was injured in competition during an attempt to bench press 565 pounds. *Id.* at 591. Mr. Lee claimed that the spotter was negligent for failing to catch the bar in a timely manner that would have prevented injury entirely. *Id.* As an experienced weightlifter, with 14 years of experience, Mr. Lee was familiar with the rules of the sport and the safety precautions that

---

8. There is some dispute between the parties as to whether Mr. Cotillo signed a waiver as a condition to participate in the Meet at issue.

were commonly taken. *Id.* The court determined, as a matter of law, that Mr. Lee voluntarily assumed the risk of injury by participating in the weightlifting competition, including the risk that the spotter may fail to catch the bar quickly enough to prevent injury. *Id.*

In sports, there are some risks, "as for example the risk of injury if one is hit by a baseball driven on a line, which are so far a matter of common knowledge in the community, that in the absence of some satisfactory explanation a denial of such knowledge simply is not to be believed." Dan B. Dobbs, Robert E. Keeton, & David G. Owen, PROSSER & KEETON ON TORTS § 68, at 488 (5th ed.1984). Furthermore, "voluntary participants in sports activities may be held to have consented, by their participation, to those injury-causing events which are known, apparent, or reasonably foreseeable consequences of their participation." *Conway v. Deer Park Union Free School Dist. No. 7,* 234 A.D.2d 332, 651 N.Y.S.2d 96, 97 (1996) (finding that summary judgment in favor of the defendants was appropriate because the plaintiff, an experienced softball player who had previously observed a sewer lid in the vicinity, assumed the risk of injury of slipping on that sewer lid while running for a fly ball). Although a sporting event participant does not consent to all possible injuries, he consents to the "foreseeable dangers" that are "an integral part of the sport as it is typically played." *Kelly v. McCarrick,* 155 Md.App. 82, 97, 841 A.2d 869, 877 (2004) (holding that a softball player assumed the risk of injury from colliding with another player). Such risks, that are inherent to a particular sport, are all foreseeable consequences of participating in that sport, and as they are obvious to a person of normal intelligence, voluntary participants in those sports assume those inherent risks.

Due to the nature of sports injuries, a participant also assumes the risk that other participants may be negligent. *See McQuiggan,* 73 Md.App. at 712, 536 A.2d at 140; *see also Pfister v. Shusta,* 167 Ill.2d 417, 420, 212 Ill.Dec. 668, 657 N.E.2d 1013, 1015 (1995) ("voluntary participants in contact

sports are not liable for injuries caused by simple negligent conduct"); *Mark v. Moser,* 746 N.E.2d 410, 420 (Ind.Ct.App. 2001) ("[V]oluntary participants in sports activities assume the inherent and foreseeable dangers of the activity and cannot recover for injury unless it can be established that the other participant either intentionally caused injury or engaged in conduct so reckless as to be totally outside the range of ordinary activity involved in the sport."). In the case *sub judice,* Mr. Cotillo assumed the risk that the spotters may have negligently failed to catch the bar because he knew that type of injury was foreseeable, he appreciated that risk, and he voluntarily accepted that risk by participating in the power-lifting competition. Therefore, we agree that the Court of Special Appeals was correct when it concluded that Mr. Cotillo did assume the risk of injury when he participated in a powerlifting competition.

## IV. Assumption of the Risk and Causation

The respondent argues that even if he did assume the risks inherent to the sport, he did not assume the enhanced risk that arose as a result of the alleged negligent training of the spotters. This analysis is misguided because it focuses on the wrong risk. In order to properly determine which risk is relevant or material to the assumption of the risk analysis, we must look to the immediate cause of the injury. *See Imbraguglio v. Great Atlantic & Pacific Tea Co.,* 358 Md. 194, 214, 747 A.2d 662, 673 (2000) (finding that the relevant issue is whether the petitioner assumed the risk that was the immediate cause of his death). *See also Wertheim v. U.S. Tennis Ass'n,* 150 A.D.2d 157, 540 N.Y.S.2d 443 (1989) (holding that a linesman's injuries from being hit by a tennis ball were not the proximate result of the Tennis Association's failure to protect him, and since the risk of being hit by a tennis ball was obvious, the linesman assumed the risk of injury).

Viewing the evidence in the light most favorable to the non-moving party, in this case the respondent, we can assume, *arguendo,* that the spotters were negligently trained. Even granted that assumption, there is no genuine dispute that the

immediate cause of Mr. Cotillo's injuries was his own failure to lift the weight successfully. The relevant question, therefore, is whether Mr. Cotillo assumed the risk of injury when he tried to lift a 530 pound weight. We hold, as a matter of law, that he did.

As we recently noted, the defense of assumption of the risk operates independently of the conduct of another person. *Morgan State University v. Walker*, 397 Md. 509, 521, 919 A.2d 21, 28 (2007). The very nature of an assumption of the risk defense is that "by virtue of the plaintiff's voluntary actions, any duty the defendant owed the plaintiff to act reasonably for the plaintiff's safety is superseded by the plaintiff's willingness to take a chance." *Schroyer v. McNeal*, 323 Md. 275, 282, 592 A.2d 1119, 1123(1991). As in *Morgan State University*, we can assume for the sake of argument that the APA was negligent in failing to prevent Mr. Cotillo's injury. *Morgan State University*, 397 Md. at 521, 919 A.2d 21. Nevertheless, just as a similar assumption did not change the analysis in *Morgan State University*, it does not change our analysis in the case *sub judice*. *Id.* That the petitioners may have been negligent in failing to prevent an injury is irrelevant where the respondent suffered the very type of injury that any person of normal intelligence would expect might result from the plaintiff's actions. The relevant inquiry, therefore, is not whether Mr. Cotillo could have anticipated that the spotters would be negligently trained, but whether he could anticipate the risk that the lift bar would fall and injure him. We hold as a matter of law that he did.

## V. *Enhanced Risk*

The respondent's reliance on the theory that the alleged negligent training of the spotters enhanced the risk is similarly misplaced. Of course, a plaintiff only assumes those risks that are inherent in the activity in which he is engaged. *Crews*, 358 Md. at 653, 751 A.2d at 495. Specifically, "every risk is not necessarily assumed by one who works in a dangerous place or at a dangerous occupation. He assumes only those risks which might reasonably be expected to exist,

and, if by some action of the defendant, an unusual danger arises, that is not so assumed." *Bull S.S. Lines v. Fisher,* 196 Md. 519, 526, 77 A.2d 142, 146 (1950). In the case *sub judice,* the respondent argues that the instructions given to the spotters prior to the Meet presented an enhanced risk of injury, and since Mr. Cotillo did not know about those instructions, he could not have assumed the enhanced risk that the instructions posed. We reject that position, because mere allegations of negligence, without more, even if genuinely in dispute, are not of consequence to the assumption of the risk analysis.

Even assuming that the petitioners were negligent in training the spotters, the theory of enhanced risk contemplates reckless or intentional conduct; therefore, any disputes of fact regarding the petitioners* negligence are immaterial to this analysis. In *Kelly,* the Court of Special Appeals held that, in the context of a voluntary sporting event, the doctrine of assumption of the risk barred a negligent instruction and training claim. *Kelly,* 155 Md.App. at 115, 841 A.2d at 888. In *dicta,* the Court of Special Appeals noted that it was not addressing "injury resulting from an intentional or reckless act." *Kelly,* 155 Md.App. at 100, 841 A.2d at 879. Thus, the court recognized that the enhanced risk argument contemplates conduct that is intentional or reckless. *See id.* We also find persuasive the reasoning of courts in other jurisdictions, which have also held that, in the context of sports-related injuries, the enhanced risk doctrine contemplates intentional or reckless conduct. *See, e.g. Kiley v. Patterson,* 763 A.2d 583, 586 (R.I.2000) (adopting the "heightened recklessness-or-intentional-misconduct standard" in an action by a second baseman as a result of injuries sustained in a collision with a base runner); *Wertheim,* 150 A.D.2d at 158, 540 N.Y.S.2d at 445 ("Generally the enhanced risk doctrine in sports injury cases involves fact patterns where a co-participant engages in reckless conduct causing injury to another participant."); *see also* Stanley L. Grazis, Annotation, *Liability of Participant in Team Athletic Competition for Injury to or Death of Another Participant,* 55 A.L.R.5th 529, 537 (1998) ("Generally, courts

have found that the duty of care owed by participants in team athletic events to each other is measured not by ordinary negligence standards, but by willfulness or recklessness standards because of considerations of the participants' assumption of risk or their consenting to an invasion of personal interests or rights by taking part in the subject contest.").

While the respondent in the case *sub judice* appears to argue in his brief that the present case fits within this line of cases, by implying that there may have been intentional or reckless behavior by the petitioners, he offered no evidence to support that implication. Moreover, we find no support for any allegations of intentional or reckless behavior in this record. Furthermore, mere "allegations which do not show facts in detail and with precision are insufficient to prevent the entry of summary judgment." *Lynx v. Ordnance Prods.*, 273 Md. 1, 7–8, 327 A.2d 502, 509 (1974). As such, we conclude that any alleged improper training of the spotters did not pose an enhanced risk to Mr. Cotillo, because the risk of injury was one that was obvious and foreseeable, and not an unusual danger. On the contrary, to be injured by the weight and the lift bar is a "risk of injury resulting from the type of physical contact that is an integral part of the sport as it is typically played." *Kelly*, 155 Md.App. at 97, 841 A.2d at 877. Because there was no intentional or reckless conduct, there was no enhanced risk. Therefore, there is no genuine dispute of material fact that Mr. Cotillo assumed the risk of injury from the lift bar when he participated in a powerlifting competition.

## VI. Video Evidence

We cannot find support for the petitioners' contention that the Court of Special Appeals did not consider the video evidence that was part of the record in the case *sub judice.* Although the Court of Special Appeals did not discuss the contents of the video, it did reference the video several times in its opinion. That the court did not discuss the contents of the video is not evidence that it failed to consider it, and without more, we cannot say that the Court of Special Appeals erred by failing to consider the video footage. The video

depicts the failed lift and the spotters' response. There may be some dispute as to whether the video depicts any evidence of negligence on the part of the spotters stemming from their training. Any such disputes are immaterial, because, as we have discussed previously, an enhanced risk requires reckless or intentional conduct. *See Kelly*, 155 Md.App. at 100, 841 A.2d 869. There is no dispute that the video fails to depict any reckless or intentional conduct, and therefore, any dispute as to the video's interpretation is immaterial to determining whether the spotters enhanced the risk of Mr. Cotillo's injuries.

## CONCLUSION

By voluntarily participating in a powerlifting competition, Mr. Cotillo assumed the risks that are the usual and foreseeable consequences of participation in weightlifting. The petitioners' alleged negligence in failing to prevent the injury is not material because Mr. Cotillo assumed the foreseeable risk of injury from a failed lift. Furthermore, any factual dispute as to whether the spotters were negligent is of no consequence because mere allegations of negligence, rather than allegations of reckless or intentional conduct, are insufficient to find that the spotters enhanced the risk of Mr. Cotillo's injuries. Therefore, we hold that the Court of Special Appeals was correct in its holding that Mr. Cotillo assumed the risk of his injuries when he voluntarily participated in a powerlifting competition. The Court of Special Appeals erred, however, in holding that Mr. Cotillo did not assume the risk that the spotters would be negligently trained or instructed.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY.**

**RESPONDENT TO PAY THE COST IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.**