73 A.3d 361

PRIME VENTURERS

v.

ONEWEST BANK GROUP, LLC et al.

No. 381, Sept. Term, 2011.

Court of Special Appeals of Maryland.

Aug. 29, 2013.

John T. Maguire (Hollman, Maguire, Titus & Korzenewski, Chartered, on the brief), Westminster, MD, for Appellant.

Brent M. Ahalt (Aaron D. Neal, McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, PA, on the brief), Greenbelt, MD, for Appellee.

Panel: GRAEFF, KEHOE, CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

GRAEFF, J.

This case arises from a real estate transaction between Prime Venturers, appellant, and David and Cheryl Leupens (the "Leupens"), in which Prime Venturers agreed to convey approximately three acres of land, located at 6704 Ridge Road

in Sykesville (the "Property"), to the Leupens, and the Leupens agreed to reconvey to Prime Venturers 1.68 acres when Prime Venturers obtained subdivision approval. The Leupens initially obtained a loan using only the parcel not affected by the Repurchase Agreement (the "Agreement") with Prime Venturers, but they subsequently refinanced their loan, this time using the entire three acres as security. OneWest Bank Group, LLC ("OneWest"), appellee, is the beneficiary of the Refinance Deed of Trust.

On April 7, 2010, Prime Venturers filed suit in the Circuit Court for Carroll County against OneWest and the Leupens.[1] Prime Venturers sought a declaration of its right to an unconditional release of OneWest's mortgage lien on 1.68 acres of the Property and an order directing that the Property be reconveyed to it in accordance with the Agreement. Prime Venturers also sought damages from OneWest for disparagement of title, tortious interference with contractual relations, and breach of its statutory obligation to release its mortgage lien on the Property. OneWest subsequently filed a counterclaim seeking a declaration that it was entitled to enforce its lien on the Property as a first-priority lien.

Both parties filed motions for summary judgment. After a hearing, the court granted summary judgment in favor of OneWest, declaring that OneWest was entitled to enforce its lien on the entire property as a first-priority lien.

On appeal, Prime Venturers raises three questions for our review, which we have consolidated and rephrased, as follows:

1. Did the trial court err in denying partial summary judgment to Prime Venturers by way of declaratory and injunctive relief, and in granting summary judgment in favor of OneWest, because Prime Venturers' right to reacquire certain land, reserved in a previously executed and recorded agreement, had priority over OneWest's interests under a subsequent deed of trust?

---

1. Prime Venturers named the Leupens as the record owners of the Property, but the Leupens' involvement with the litigation has been minimal.

2. Did the trial court err in finding that it lacked equitable authority to subordinate OneWest's interests under a subsequent deed of trust to Prime Venturers' interest under a previously executed and recorded agreement, which reserved the substantive right of Prime Venturers to reacquire certain deeded property from its grantee for minimal additional consideration?

For the reasons set forth below, we shall reverse the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 30, 2003, Prime Venturers and the Leupens executed two instruments relating to the conveyance of the Property, which consisted of 3.1477 acres of land improved by a residential dwelling. One instrument was the Agreement, which indicated that, at some point prior to July 30, 2003, the parties had executed a contract for the sale of the Property.[2] The other instrument was a deed of conveyance (the "Deed").

The Agreement set forth the terms of the Leupens' obligation to reconvey a portion of the Property. It provided, in pertinent part, as follows:

WHEREAS, [the Leupens] wish to purchase the dwelling, together with a parcel of land containing 1.4629 acres surrounding same . . .; and

WHEREAS, the parcel which the [Leupens] wish to purchase has not yet been formally subdivided through the process set forth by the Bureau of Development Review for Carroll County, Maryland; and

WHEREAS, in order to accomplish the objectives of [Prime Venturers] and [the Leupens], the parties hereto have agreed that [Prime Venturers] shall sell unto [the Leupens] the entire tract, subject to the provisions set forth herein, whereby [the Leupens] will agree to cooperate with [Prime Venturers] during the subdivision process, and *at*

---

2. This contract was not contested before the circuit court and is not at issue in this Court.

*such time as the property has been formally subdivided, reconvey unto [Prime Venturers], the portion of the property, as shown on the attached EXHIBIT 'A', for the sum of ONE DOLLAR ($1.00),* provided that such subdivision and reconveyance is at no cost or expense to [the Leupens], and for reasons therefor, this Addendum is now executed.

NOW, THEREFORE, THIS ADDENDUM TO CONTRACT OF SALE WITNESSETH, that in consideration of the premises, the underlying Contract of Sale, and other mutual covenants and agreements, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. The parties have settled on the underlying Contract of Sale for the entire 3.1477 acres of land, more or less, and [Prime Venturers] has executed a Deed for same, intended to be recorded among the Land Records of Carroll County prior hereto.

2. *[The Leupens] agree to take the title to said 3.1477 acres, subject to their agreement, by the execution hereof, to reconvey to [Prime Venturers], the portion of said property, approximately [ ]1.6848 acres, for ONE DOLLAR ($1.00), at such point in time as [Prime Venturers] is able to record a subdivision plat through the proper authorities of Carroll County, Maryland, for the remainder of said property, said plat to contain no more than five (5) additional building lots.*

\* \* \*

5. [The Leupens] further agree that they will make their lender, or any subsequent lender of theirs financing the subject property, aware of the contents of this Agreement, and will provide such assurances to [Prime Venturers] as necessary that any such lender will agree, upon [Prime Venturers'] request, to release the portion of the property intended to be reconveyed unto [Prime Venturers], from any mortgage or deed of trust covering the subject property, for no consideration.

\* \* \*

9. *The provisions and covenants set forth in this Agreement shall remain in full force and effect for a period of ten (10) years after the date of settlement on the underlying Contract of Sale. Should [Prime Venturers] not be able to complete a subdivision plat in recordable form, and have same approved by the appropriate governmental authorities and recorded among the Land Records of Carroll County no later than ten (10) years after settlement, the terms and provisions hereof shall be void and of no further effect....*

\* \* \*

11. *The provisions set forth herein shall survive settlement on the entire tract, and shall not be deemed to be merged in a deed of conveyance from [Prime Venturers] to [the Leupens].*

(Emphasis added). The Agreement was signed by Prime Venturers' president and general partner, Richard L. Hull, as well as by the Leupens, and the instrument was notarized.

The second instrument executed by the parties on July 30, 2003, was the Deed. It provided:

That for and in consideration of the sum of THREE HUNDRED THIRTY THOUSAND DOLLARS and 00/100 ($330,000.00), and other good and valuable considerations, the receipt of which is hereby acknowledged, the said Grantor [Prime Venturers] does grant and convey to the said DAVID V. LEUPEN and CHERYL L. LEUPEN, HUSBAND AND WIFE, as Tenants by the Entirety, their assigns, the survivor of them and the survivor's personal representatives and assigns in fee simple, all that lot of ground situate in Carroll County, Maryland described as follows....

The Deed then described the entirety of the 3.1477 acres of property, and in a subsequent clause provided:

**Together** with the buildings and improvements thereon erected, made or being; and all and every, the rights, alleys,

ways, waters, privileges, appurtenances and advantages thereto belonging, or in anywise appertaining.

\* \* \*

**And** [Prime Venturers] hereby covenants that [it] has not done or suffered to be done any act, matter or thing whatsoever, to encumber the property hereby conveyed; that [it] will warrant specially the property hereby granted; and that [it] will execute such further assurances of the same as may be requisite.

Unlike the Agreement, which made specific reference to the Deed, the Deed contained no reference to the Agreement, nor did the Deed reserve any rights to Prime Venturers.

On August 21, 2003, at 9:30 a.m., The Sentinel Title Corporation ("Sentinel") recorded the Agreement in the land records for Carroll County at Book (Liber) 3593, Pages (Folio) 0556–0560. Sentinel recorded the Deed that same date, at 9:31 a.m., at Book (Liber) 3593, Pages (Folio) 0561–0565. Thus, as evidenced by the sequential pagination and the time/date stamps, the Agreement was recorded just prior to the Deed.

Of the original $330,000 purchase price for the Property, $264,000 was financed through a loan obtained by the Leupens from National City Mortgage. The mortgage loan was secured by a deed of trust against "lot number 6" of the Property, i.e., the 1.4629 acre portion of the Property containing the dwelling residence, not the Property as a whole.

Several years later, on January 11, 2007, the Leupens refinanced and borrowed $414,200 from AmTrust Mortgage Corporation ("AmTrust"). As security for the loan, the Leupens used the entire 3.1477 acres of the Property conveyed to them by Prime Venturers in 2003. The Leupens executed a Refinance Deed of Trust, which was recorded in the land records. The Leupens stated in answers to interrogatories that they informed Prime Venturers that they had "verbally notified the lender's loan officer, broker, agent or employee of the . . . Agreement," but there was no specific reservation or exclusion in the Refinance Deed of Trust relating to the terms

of the Agreement. The covenants in the Refinance Deed of Trust provided that the Property "is unencumbered, except for encumbrances of record." OneWest subsequently took possession of the Refinance Deed of Trust and assumed the rights of AmTrust.

Prime Venturers asserted in its Complaint that, in 2009, it obtained subdivision approval. That same year, Prime Venturers recorded the subdivision plat in the land records for Carroll County, and it requested that the Leupens reconvey the portion of the Property specified in the Agreement.

The Leupens were willing to reconvey the portion of the Property pursuant to the Agreement, but OneWest's Refinance Deed of Trust provided that, if any part of the Property is sold or transferred without OneWest's consent, OneWest may require immediate payment of the entire loan. Prime Venturers requested that OneWest release its lien on the 1.6848 acres based on the terms of the Agreement. OneWest refused, and this litigation ensued.

Both Prime Venturers and OneWest filed Motions for Summary Judgment. At the hearing on the motions, OneWest argued that the Deed, which conveyed the entire Property to the Leupens in fee simple, without any reservation of rights to Prime Venturers or any reference to the Agreement, was unambiguous, and the court should not look beyond the four corners of that document. Although it believed that the Agreement was binding on the Leupens and Prime Venturers, it asserted that, as it related to third parties, the Agreement was extinguished by the later-recorded Deed, which provided that the Property was not encumbered in any way. Addressing paragraph 11 of the Agreement, which states that the "provisions set forth herein shall survive settlement on the entire tract and shall not be deemed to be merged in a deed," OneWest argued that this was not relevant to the issue of who has title to the Property, but instead, the clause created a contractual issue between the Leupens and Prime Venturers.

Prime Venturers countered that the Deed and the Agreement were recorded "simultaneously," that OneWest had con-

structive and/or actual notice of the Agreement, and therefore, OneWest could not claim "bona fide" purchaser status. Prime Venturers posited that the terms of the Agreement constituted an "encumbrance of record," and the Refinance Deed of Trust expressly provided that it was subject to an encumbrance of record. It argued that, pursuant to the provision in paragraph 11 of the Agreement, both documents had to be considered, regardless whether there was a reservation of rights in the Deed. Prime Venturers contended that the Leupens could only grant to AmTrust "what they had," and that was not fee simple title pursuant to the Deed, but rather, it was title subject to the limitations of the Agreement.

Following the motions hearing, the circuit court held the matter *sub curia.* On April 11, 2011, it issued its written decision granting judgment in favor of OneWest.

In its memorandum opinion, the court cited Maryland law holding that, if a deed is unambiguous, the court "should find the parties' intent in the language of the deed as written without resort to surrounding circumstances or extrinsic evidence." The court then found that the Deed here was unambiguous; it conveyed "*all* interests held by [Prime Venturers] to the Leupens, without reservation." Indeed, the court stated that, "rather than create a reservation that would subject the transfer of the property to any interest that was established in the ... Agreement, the [D]eed ... provide[d] an *inclusive* description that grant[ed] all 'buildings and improvements thereon erected ... and all and every, the rights, alleys, ways, waters, privileges, appurtenances and advantages thereto belonging, or in anywise appertaining.' " Moreover, the final paragraph of the Deed, the "special warranty" provision, "reiterated that the [D]eed is *not* subject to any encumbrances."

The court noted that the Agreement specifically stated that Prime Venturers' intent was to record the Deed prior to the Agreement. The court stated that, had that intent been realized, the Agreement "may have created an encumbrance to the [D]eed." The court found, however, that given the way

the documents actually were recorded, the Deed, which warranted that Prime Venturers had not encumbered the Property in any way, was the final document, and a third-party is only required to give legal effect to the documents as recorded, "not as intended to be recorded."

Having found the Deed to be unambiguous, the court concluded that it "is impermissible to look to any surrounding facts and circumstances or consider extrinsic evidence," i.e., the Agreement, "to determine the intent of the parties," as "the intent of the parties is clear from the four corners of the [D]eed." Pursuant to the terms of the Deed, Prime Venturers "conveyed all of its interest, without reservation, to the Leupens." The court found that, "as a matter of law, the Leupens were then free to transfer or encumber the entire property as they saw fit."

The court next observed that, although consideration of the terms of the Agreement "in a way that would otherwise vary the language of the unambiguous [D]eed . . . would be an improper interpretive method for the [c]ourt to employ," such a determination did not "render [the Agreement] a nullity." In that regard, the court "construe[d] the Agreement as establishing a contractual obligation upon the Leupens to reconvey the property to [Prime Venturers] only if, within ten years of the [D]eed's execution, [Prime Venturers] recorded an approved subdivision plat." Although that created a contractual obligation between Prime Venturers and the Leupens, the court found that "it cannot be construed as restricting the transferability of the real property to a third party" because the "enforceability of the Agreement was contingent upon [Prime Venturers'] future and uncertain action." The court found that, "even if the Agreement created some type of equitable interest in the land on behalf of Plaintiff, the equitable conversion creating that interest did not occur until August 31, 2009 and thus *after* AmTrust had obtained its interest in the property."

"Central" to the court's findings was the "concept that recording the [D]eed . . . after the Agreement in the Land

Records ... impacted the legal effect of these instruments as they applied to third parties." The court concluded that, "when the Leupens accepted the deed of conveyance through the recording of that [D]eed, which was done after the Agreement, it vacated the effect of recording the Agreement because the terms of the [D]eed ... conflicted directly with the terms of the Agreement and the exact same parties executed each instrument."

Based on the terms of the Deed, the Leupens possessed all 3.1477 acres in fee simple, which they could use as security for the loan with AmTrust. The court found, therefore, that AmTrust possessed a first-priority mortgage lien, which was not subject to any interest that might later arise under the Agreement between the Leupens and Prime Venturers. Therefore, when OneWest took possession of the Refinance Deed of Trust as successor-in-interest, it assumed all of the rights held by AmTrust with respect to enforcing a lien on the Property.

The court's written order granted OneWest's motion for summary judgment, declaring that OneWest "is entitled to enforce as a first-priority lien the lien it holds on the entirety of the real property used as security in the Refinance Deed of Trust." It further found that, because OneWest was entitled to declaratory judgment, Prime Venturers' claims against OneWest for monetary damages were unsupported, and it dismissed these claims. Finally, the court stated that, because Prime Venturers sought no affirmative relief against the Leupens, the court would dismiss Prime Venturers' claims against the Leupens, without prejudice.

## STANDARD OF REVIEW

Pursuant to Maryland Rule 2–501(f), the grant of a motion for summary judgment is appropriate only "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." The parties here agree that, for purposes of the summary judg-

ment motions, there are no genuine disputes of material fact; the issue is whether the court correctly applied the law to the facts.

 The court here granted summary judgment in a declaratory judgment action. This is the exception, rather than the rule, but circumstances may warrant the entry of a full or partial summary judgment in such a context. *Megonnell v. United Auto. Ass'n,* 368 Md. 633, 642, 796 A.2d 758 (2002); *Nationwide Mut. Ins. Co. v. Scherr,* 101 Md.App. 690, 695, 647 A.2d 1297 (1994), *cert. denied,* 337 Md. 214, 652 A.2d 670 (1995); *Loewenthal v. Security Ins. Co.,* 50 Md.App. 112, 117, 436 A.2d 493 (1981). The " 'standard of review of [a] [ ] declaratory judgment entered as the result of the grant of a motion for summary judgment is whether that declaration was correct as a matter of law.' " *Olde Severna Park Improvement Ass'n v. Gunby,* 402 Md. 317, 329, 936 A.2d 365 (2007) (quoting *South Easton Neighborhood Ass'n v. Town of Easton,* 387 Md. 468, 487, 876 A.2d 58 (2005)). Our review of the court's entry of summary judgment is *de novo. Am. Powerlifting Ass'n v. Cotillo,* 401 Md. 658, 667, 934 A.2d 27 (2007); *Tyma v. Montgomery County,* 369 Md. 497, 504, 801 A.2d 148 (2002).

## DISCUSSION

The primary dispute between the parties, and the issue that is dispositive on appeal, is the legal effect of the Agreement. Specifically, the question is whether the Agreement, which addressed reconveying 1.6 acres of the Property to Prime Venturers, merged into, and was extinguished by, the Deed, which did not include a reference to this Agreement.

Prime Venturers asserts that the Agreement and the Deed were part of a "single transaction," and because they were "properly recorded together," prior to OneWest's interest in the Property, they have priority. Prime Venturers contends that OneWest was on notice of Prime Venturers' interest, and therefore, it cannot claim bona fide purchaser status.

Prime Venturers further argues that the Agreement did not merge into the Deed because it was not inconsistent with the

Deed. Rather, Prime Venturers asserts, the Agreement was a collateral agreement, which Prime Venturers characterizes as a "reservation of title," that gave it an equitable interest in the 1.68 acres.[3]

OneWest argues, as it did in the circuit court, that the repurchase option contained in the Agreement was extinguished when Prime Venturers recorded the Deed. It asserts that the controlling document is the Deed, which unambiguously granted the Property "without reservation," thereby granting "all of [Prime Venturers'] rights in the property, including the right of repurchase," to the Leupens. It contends that, "[h]aving granted fee simple title to the Leupens, Prime Venturers retained no further right, title, or interest in the Property," and therefore, Prime Venturers "cannot now enforce the [Agreement] against any third parties." Because Prime Venturers retained no rights in the Property, OneWest asserts, Prime Venturers' arguments regarding OneWest's status as a bona fide purchaser, with actual or constructive notice of the Agreement, are irrelevant.[4]

OneWest further argues that, even if the Agreement survived the Deed, Prime Venturers did not have any interest enforceable against OneWest. It asserts that the Agreement, which it characterizes as an option contract, did not vest an equitable interest in Prime Venturers when the option was exercised. It asserts that no equitable interest had vested prior to the time the Refinance Deed of Trust was recorded

---

3. Prime Venturers also asserts that the court had the equitable power to reform the Deed to comport with the "obvious intent of the parties," and that public policy considerations dictate that the parties' clear intention should be enforced. OneWest counters that Prime Venturers did not request reformation in the circuit court, and therefore, the issue is not preserved. We agree with OneWest and will not address this contention. *See* Md. Rule 8–131(a) ("Ordinarily, the appellate court will not decide any ... issue unless it plainly appears by the record to have been raised in or decided by the trial court.").

4. OneWest acknowledges that the Agreement is enforceable against the Leupens, but not against OneWest. It asserts: "[A]s to a third-party purchaser of the Property, the Deed is an unambiguous transfer of all Prime Venturers' rights to the Leupens."

because: (1) there is no evidence of one of the contingencies to exercise the option to reconvey the 1.6 acres, i.e., the payment to the Leupens of $1.00; and (2) even if the option was exercised by recording the subdivision plat, this occurred in 2009, after OneWest's deed of trust was recorded.[5]

As indicated, the primary issue in this case is whether the Agreement merged into the subsequently recorded Deed. If it did not, the next question is the effect it has, if any, on OneWest's lien. As explained below, we disagree with the circuit court's conclusion that the recording of the Deed vacated the Agreement. We hold that the Agreement to reconvey the 1.6 acres was a collateral agreement that was not intended to, and did not, merge into the Deed. Accordingly, we will remand to the circuit court to address Prime Venturers' argument that, because the Agreement was recorded, giving OneWest notice of the provisions, it has priority over OneWest's Deed of Trust.

## A.

### General Rule that Agreements Merge into Deed

■ The Court of Appeals has explained the doctrine of merger, as it relates to deeds and related agreements, as follows: "[A] prima facie presumption arises from the acceptance of a deed that it is an execution of the entire agreement for the sale of the realty, and the rights of the parties in relation to the agreement are to be determined by the deed." *Dorsey v. Beads,* 288 Md. 161, 170, 416 A.2d 739 (1980) (quoting *Barrie v. Abate,* 209 Md. 578, 582–83, 121 A.2d 862 (1956)). The purpose of the merger doctrine is to protect both

---

5. OneWest also contends that the Agreement was an option contract with a term of more than five years, and therefore, it is unenforceable as an unreasonable restraint on alienation. This argument, as well as another argument based on federal law, was not raised or decided below, and therefore, we shall not address it. *See* Md. Rule 8–131(a) ("Ordinarily, the appellate court will not decide any ... issue unless it plainly appears by the record to have been raised in or decided by the trial court.").

the integrity of the deed and the integrity of the contracting process. *In re: Tribby,* 241 B.R. 380, 386–87 (E.D.Va.1999).

The doctrine, however, is not absolute. As explained below, there are exceptions to the rule.

## B.

### Collateral Agreements

■■■■ One exception to the presumption of merger is "where the agreement contains covenants collateral to the deed or where the deed appears to be only a partial execution of the contract." *Levin v. Cook,* 186 Md. 535, 539, 47 A.2d 505 (1946). *Accord Kandalis v. Paul Pet Constr. Co., Inc.,* 210 Md. 319, 322, 123 A.2d 345 (1956) ("[A]cceptance of a deed does not effect a merger of collateral agreements where it appears that the deed is only a partial execution of the contract."); CORBIN ON CONTRACTS § 73.4 ("Antecedent promises of a performance that are to be rendered subsequent to the conveyance are not discharged by any so called 'merger.' "). Thus, although the general rule is that a "contract for the sale of land becomes null and void when a deed conveying the property to the purchaser is executed and accepted," there is an exception "where it contains collateral covenants, or where it appears that the execution of the deed was only a partial execution of the contract." *Rosenthal v. Heft,* 155 Md. 410, 418, 142 A. 598 (1928).

■■■ A collateral promise is allowed to survive closing because the performance is not necessary to the conveyance of real estate. *Link v. Breen,* 649 N.E.2d 126, 128 (Ind.Ct.App. 1995). The Court of Appeals has explained:

> The general rule is that a deed includes all prior negotiations and agreements leading up to its execution and delivery, so that a merger is thereby effected. However, such rule does not apply to real estate contract provisions or other matters not performed or consummated by delivery and acceptance of the deed. In other words, collateral agreements or conditions not incorporated in the deed or

inconsistent therewith are not merged in the deed. Generally, contract provisions as to title, possession, quantity or emblements of land are conclusively presumed to be merged into the subsequently delivered and accepted deed, even thought the contract and deed vary.

*Dorsey*, 288 Md. at 170–71, 416 A.2d 739 (quoting H. TIFFANY, LAW OF REAL PROPERTY § 981.05 (3d ed.1975)).

## C.

### Agreement to Reconvey is a Collateral Agreement

██ The parties have not cited any Maryland case that has considered whether an agreement to reconvey property is collateral to a deed. We hold that such a provision is a collateral agreement, and there is no presumption that an agreement to reconvey property merges into a subsequently recorded deed. Instead, the intent of the parties should be considered to determine whether the agreement merges in the deed.

Decisions in other jurisdictions are in accord with this holding. In *Peterson v. Peterson*, 431 So.2d 672 (Fla.Dist.Ct. App.1983), the District Court of Appeal of Florida considered the significance of an agreement between two brothers, Roy and Jack, which was entered into contemporaneously with a deed. The agreement provided that Roy would convey to Jack a life estate in the property, but in the event that Jack ceased to occupy the property, Jack would reconvey it to Roy. Jack argued, after he had ceased to occupy the property, that the agreement was unenforceable because it merged into the deed, which made no mention of the separate agreement. *Id.* at 673. The court disagreed, noting that, "[w]here an agreement is collateral to, or independent of, the provisions of a deed, there is no merger." *Id.* The court held that the agreement to reconvey the property, upon a certain stated condition, "by its very terms reflects the intent of the parties that it be independent of the deed." *Id.* The court also noted that the agreement "could not become effective until after the delivery of the deed, since prior to that time Jack would have

no life estate to forfeit by ceasing to occupy the property."
*Id.*

In holding that the agreement to reconvey was a collateral agreement that did not merge into the deed, the court cited *Industrial Development Foundation of Auburn, New York, Inc. v. United States Hoffman Machinery Corporation,* 11 Misc.2d 625, 171 N.Y.S.2d 562, 566 (N.Y.Sup.Ct.1958), *aff'd,* 8 A.D.2d 579, 183 N.Y.S.2d 1011 (1959). In that case, the Supreme Court of New York addressed a contract provision to reconvey a manufacturing plant to the seller, at the seller's option, in the event that certain operations were not continued in the plant for five years. In holding that the agreement did not merge in the deed, which did not reference this agreement, the court stated:

> Where a contract to convey is followed by a deed, only those provisions of the contract are deemed to be merged in the deed which relate to the conveyance itself; other provisions in the contract remain in force and there is no presumption of merger as to such provisions.

> In *Siebros Finance Corp. v. Kirman* [232 A.D. 375, 249 N.Y.S. 497, 499 (1931)], a contract for the conveyance of real property contained an option giving the vendee the right to resell the property to the vendor after a certain date. In discussing the defense of merger the court there said ...: "The contract clearly shows that there was no intention on the part of the parties to merge the contract in the deed. A contract for the sale of real estate is merged in the deed only when the latter is intended to be accepted in full performance of the former. This intention may be derived from the instruments alone or from the instruments and the surrounding circumstances. Collateral undertakings not a part of the main purpose of the transaction, that is, the conveyance of real estate, by their very nature may show an intent that they should not be merged in the deed and, therefore, are not extinguished by the acceptance of the deed."

*Id.* at 567–68 (some citations omitted). The court held that the agreement "to reconvey the premises in the event of a breach of the condition subsequent was a continuing obligation for a period of five years," it was a collateral agreement, and the contract "by its very terms showed there was no intention that such provisions should merge in the deed." *Id.* at 568.

Similarly, in *Doty v. Sandusky Portland Cement Company of Ohio*, 46 Ind.App. 440, 91 N.E. 569, 570–71 (1910), the Appellate Court of Indiana noted that the sellers agreed to convey land to the buyer on the condition that a factory would be built on the land, and if a factory was not built, the buyer would reconvey the land to the sellers for half of the purchase price. The court held that the agreement to reconvey was not merged in the subsequent deed. *Id.* at 571.

Consistent with these cases, we hold that an agreement to reconvey property, which takes effect only upon the occurrence of a condition subsequent, i.e., a condition which by its terms cannot be performed until after the delivery of the deed, is a collateral agreement. Where such an agreement exists, there is no presumption that the agreement merges in a subsequently filed deed. Rather, the court must look to the intention of the parties. We thus turn to that step of the analysis in this case.

## D.

### Intention of the Parties

■ Intention is a question of fact that "must be divined from all the documents comprising the transaction." *DWS Holdings, Inc. v. Hyde Park Assoc.*, 33 Md.App. 667, 675, 365 A.2d 554 (1976). Here, there is no dispute that Prime Venturers and the Leupens intended that the Agreement should survive the Deed. This is abundantly clear for at least two reasons. First, the specific terms of the Agreement make this intent clear. Second, the nature of the agreement was such that it could not be performed until after execution of the Deed.[6]

---

6. At the hearing below, counsel for OneWest, noting the deposition testimony of the Leupens and Prime Venturers, stated that OneWest

Starting first with the nature of the agreement, it shows the intent of the parties that the Agreement would survive execution of the Deed. The agreement to reconvey could not be performed until after the closing of the sale because the Leupens could not reconvey a portion of the Property until they owned it.

In *Bruggeman v. Jerry's Enterprises, Inc.,* 591 N.W.2d 705, 706 (Minn.1999), the Supreme Court of Minnesota considered whether the merger doctrine applied to an agreement that gave the seller the right to repurchase a parcel of real property if the buyer had not started development of the property within two years. When the seller sought to exercise the right to repurchase, the buyer asserted that, because neither the closing documents nor the deeds reserved repurchase rights or referenced the option agreement, the agreement merged into the deed. *Id.* The seller filed suit seeking an order for specific performance of the buyers obligation under the repurchase agreement. *Id.*

Noting that the presumption of merger can be overcome with evidence to the contrary, i.e., by looking to the intent of the parties, the court held that the doctrine did not apply to an agreement that could not, by its very nature, be performed prior to closing. *Id.* The court stated:

"If the promise is contemplated by the contract to be performed at closing and it is not so performed, then there is some reason to infer that the parties intended that the agreed-upon performance not be required and that the promisee has thereby accepted a substituted performance. On the other hand, if the promise is by its nature not performable until some time after closing, then there is no particular reason to infer that the promisee has agreed to abandon the right to performance, from the mere fact that

was not disputing Prime Venturers' intent, but rather, counsel argued that they did not convey this intent properly to third parties, relying on: (1) the order of recording the documents with the Agreement being recorded before the Deed; and (2) that the Deed did not contain a reservation or a reference to the Agreement.

the undertaking has not been repeated in the deed or other closing papers."

*Id.* at 709 (quoting Lawrence Berger, *Merger by Deed—What Provisions of a Contract for the Sale of Land Survive the Closing?*, 21 REAL EST. L.J. 22, 33–34 (1992)). Thus, the court held that the presumption of merger did not apply to the repurchase option agreement "which could not, by its very nature, be performed prior to closing." *Id.* at 710.

A similar analysis applies here. That the repurchase agreement could not be performed until after closing, when the Leupens owned the Property, shows the intent of the parties not to abandon the Agreement even though it was not referenced in the Deed.

 Moreover, if there were any doubt about the intent of the parties, it is dispelled by the terms of the Agreement, which made very clear the intent that the Agreement would survive execution of the Deed. The Agreement contained an explicit survival clause, stating that its provisions would "survive settlement on the entire tract, and shall not be deemed to be merged in a deed of conveyance from [Prime Venturers] to [the Leupens]." As this Court has recognized, "the presumption of merger ... is negated when the contract of sale contains language providing that the agreement shall survive the execution of the deed." *Erlewine v. Happ*, 39 Md.App. 106, 109, 383 A.2d 82 (1978).[7]

---

7. As indicated, the circuit court refused to look at the terms of the Agreement, noting the general rule "that parol evidence is not admissible to contradict, add to, subtract from, or vary the terms of a deed or control its legal operation except where it is impeached for fraud or where it is sought to be reformed upon allegations of fraud, accident, or mistake." *Levin v. Cook*, 186 Md. 535, 538, 47 A.2d 505 (1946). As we have explained, however, extrinsic evidence of collateral facts relating to the sale of realty may be considered if the collateral facts are consistent with the deed and do not tend to contradict it. *Id.* at 540, 47 A.2d 505. *See also* 77 AM JUR 2D VENDOR AND PURCHASER § 245 ("Proof of matters collateral to the deed which are not merged therein is not a violation of and is not excluded by the rule excluding extrinsic evidence to vary or contradict a deed of conveyance.").

In sum, based on the specific language of the Agreement, and the collateral nature of the Agreement, it is clear that the parties intended that the Agreement survive the execution of the Deed. Accordingly, the Agreement was not extinguished by the Deed, and the trial court's ruling to the contrary was error.

As indicated, the parties raise multiple other arguments addressing the applicability of the Agreement regarding OneWest. The circuit court, however, made clear that its ruling was premised on its finding that the Agreement, as it related to OneWest, was superseded by the Deed. The court stated:

> Central to the Court's findings in this case is the concept that recording the deed of conveyance after the Agreement in the Land Records of Carroll County, Maryland, impacted the legal effect of these instruments as they applied to third parties, including AmTrust.
>
> * * *
>
> [W]hen the Leupens accepted the deed of conveyance through the recording of that deed, which was done after the Agreement, **it vacated the effect of recording the Agreement** because the terms of the deed of conveyance conflicted directly with the terms of the Agreement and the exact same parties executed each instrument.

(Emphasis added).

Based on this finding, which we have found to be erroneous, the court declined to address Prime Venturers' argument that its recording of the Agreement put OneWest on notice of Prime Venturers' interest and prevented it from claiming to be a bona fide purchaser for value.[8] Because "our review of the trial court's grant of summary judgment is limited ordinarily to the legal grounds relied upon explaining its disposi-

---

8. OneWest similarly argued below, and on appeal, that the question whether it "had notice (active or constructive)" of the Agreement was irrelevant because the Agreement did not survive the recording of the Deed.

tion," *Baker v. Montgomery County*, 427 Md. 691, 706, 50 A.3d 1112 (2012), we will remand to the circuit court to consider Prime Venturers' argument in this regard, as well as other issues the court deems pertinent in light of our holding that the Agreement was not vacated by the recording of the Deed.

**JUDGMENT VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR CARROLL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**